**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Arthur COSGROVE, Defendant–**
**Appellant.**

**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Arthur ROGE, Defendant–Appellant.**

**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Pedro DELGADO, Defendant–Appellant.**

**Nos. 92–5078, 92–5079 and 92–5091.**

United States Court of Appeals,
Eleventh Circuit.

Jan. 22, 1996.

Robert S. Reiff, P.A., G. Richard Strafer, Miami, FL, for appellant in No. 92–5078.

Frank O. Bowman, III, Harriett R. Galvin and Linda Collins Hertz, Asst. U.S. Attys., Miami, FL, for Appellee.

Robert N. Scola, Jr., P.A., G. Richard Strafer, Miami, FL, for appellant in No. 92–5079.

Mario S. Cano, Coral Gables, FL, for appellant in No. 92–5091.

Before COX, Circuit Judge, DYER, Senior Circuit Judge, and GOETTEL *, Senior District Judge.

COX, Circuit Judge:

Appellants pleaded guilty to conspiracy to import cocaine. Based on appellants' substantial assistance, the government moved for a downward departure from the sentencing guidelines range applicable to each appellant, 151 to 188 months. The government recommended a 66–month sentence for Cosgrove, an 84–month sentence for Roge, and a 60–month sentence for Delgado, representing that appellants' culpability and degree of cooperation differed. The district court declined to follow the government's recommendations, sentencing each appellant to 100 months in prison.

The district court calculated each of appellant's sentences according to what appellants call a "rigid and undisclosed sentencing policy." The court started at the bottom of the guideline range (151 months) and departed downward by one-third in recognition of the appellant's substantial assistance, thus arriving at a 100–month sentence. The court said that, in the future, defendants could expect substantial assistance departures to be calculated the same way.

On appeal, defendants argue that this rigid sentencing policy violated 18 U.S.C. § 3553 and § 5K1.1[1] of the federal sentencing guidelines, as well as due process, by failing to consider individual culpability and cooper-

---

* Honorable Gerard L. Goettel, Senior U.S. District Judge for the Southern District of New York, sitting by designation.

1. Section 5K1.1 provides:

 Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines.

 (a) The appropriate reduction shall be determined by the court for reasons stated that may include, but are not limited to, consideration of the following:
 (1) the court's evaluation of the significance and usefulness of the defendant's assistance,

taking into consideration the government's evaluation of the assistance rendered;
(2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;
(3) the nature and extent of the defendant's assistance;
(4) any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance;
(5) the timeliness of the defendant's assistance.

United States Sentencing Commission, *Guidelines Manual*, § 5K1.1 (Nov. 1992).

ation and statutory sentencing consider-ations.[2] Appellants raise a serious question about the legality of the district court's sentencing policy under § 5K1.1.

 However, none of the appellants raised this issue in the district court. Roge knew about the sentencing policy when he was sentenced but failed to object; thus, he waived his objection. Cosgrove did not know of the sentencing policy when he was sentenced because the court did not disclose it until later. Still, we generally do not address issues that have not first been presented to the district court for a ruling. Therefore, the proper vehicle for Cosgrove to attack his sentence on this ground is not direct appeal but a 28 U.S.C. § 2255 motion in the district court. Similarly, if Delgado did not know of the sentencing policy when he was sentenced, he may challenge his sentence in a § 2255 motion.

### FACTUAL AND PROCEDURAL BACKGROUND

Each of the appellants, pursuant to a coop-eration agreement with the government, pleaded guilty to one count of conspiracy to import cocaine; Delgado also pleaded guilty to one count of importation of cocaine. In exchange for appellants' guilty pleas and co-operation, the government agreed to file a § 5K1.1 motion requesting a departure from the sentencing guidelines for each appellant. Each appellant's plea agreement stated that the district court was not bound by the gov-ernment's sentencing recommendation. In addition, each plea agreement stated that, if the district court declined to follow the gov-ernment's recommendation, the defendant

would not be allowed to withdraw his plea and faced a potential maximum sentence of life imprisonment.

The district court held a change of plea hearing for each appellant.[3] Each appellant stated that he had read his plea agreement and gone over its terms with his attorney; that he understood the minimum and maxi-mum sentences that could be imposed; that the court could impose a sentence more or less severe than the applicable guideline range; and that he would be bound by his plea if his sentence was more severe than he expected.

The guideline sentencing range applicable to each defendant was 151–188 months. The government filed a § 5K1.1 motion on behalf of appellants and several co-defendants. The government recommended a 66–month sen-tence for Cosgrove, an 84–month sentence for Roge, and a 60–month sentence for Del-gado. The government's motion explained that its recommendation as to each defendant was based on his level of cooperation and culpability in the offense.[4]

We recount appellants' sentencing hear-ings in some detail because appellants' fail-ure to object on the grounds asserted on this appeal is central to our analysis. Appellants Cosgrove and Roge, as well as co-defendant Wolfenstein, were sentenced on November 2, 1992. Cosgrove was sentenced first. The district court stated that it was reducing Cosgrove's sentence as a result of the gov-ernment's § 5K1.1 motion. But the court declined to follow the government's recom-mendation of 66–months imprisonment, sen-tencing Cosgrove to 100 months instead. The district court asked whether Cosgrove had any objection to the court's findings of

---

2. Defendants also argue that their guilty pleas were not voluntary because the district court failed to comply with Fed.R.Crim.Proc. 11(e)(2), which requires a trial court to inform defendants that they may not withdraw their guilty pleas if the court declines to follow the government's sentencing recommendations. A review of the record reveals that this argument is meritless. *See* 11th Cir.R. 36–1.

3. Delgado did not make his change of plea pro-ceeding part of the record on appeal. Because he does not argue otherwise, we assume that the district court engaged in the same colloquy with him as with Roge and Cosgrove.

4. At appellant Roge's sentencing hearing, the prosecutor again explained:

Moreover, in this particular case, I'm a bit concerned that these three defendants, whose culpability and actions I think are different one from the other, not receive exactly the same sentences for conduct which in the Govern-ment's view is different. They are not entirely similarly situated, and the Government's rec-ommendations reflect that.

(R. 8 at 33.)

fact or to the manner in which his sentence was pronounced. Cosgrove's counsel replied, "No, your Honor." (R. 8 at 9.)

It was in sentencing co-defendant Wolfenstein immediately after Cosgrove that the district court first disclosed its sentencing policy. The court stated:

> What I am doing in essence is to arrive at the guideline range which has been calculated at 151 to 188 months, to go immediately because of the pleas here to the bottom of that guideline range of 151 months and to take into account the substantial assistance that has been provided by taking an additional one-third off of that sentence to arrive at the 100–month range.

(R. 8 at 12.) Then, after statements by counsel and the defendant, the court sentenced Wolfenstein to 100–months imprisonment.

Appellant Roge was sentenced immediately after Wolfenstein. Roge's counsel, "quite frankly a little shocked at the sentences . . . handed out for Mr. Cosgrove and Mr. Wolfenstein," urged the court to follow the government's recommendation as to Roge's sentence. (R. 8 at 28.) Counsel argued that the government was aware of each appellant's relative culpability and in the best position to evaluate the value of their cooperation. He also argued that not following the government's recommendations would adversely affect the government's ability to resolve cases in the future. The prosecutor echoed Roge's concerns about the court not following the government's sentencing recommendations.

The court responded at length to Roge's and the prosecution's arguments that the government's recommendation should be followed. The court noted that it had gone to great length at the time of Roge's plea to explain that the government's recommendation was not binding on the court. The court disagreed with the government's assertion that the harm to society caused by appellants' actions was reflected by the government's specific sentencing recommendations. As to the effect of not following the government's recommendation on future cases, the court said:

> [F]or future cases, if the attorneys are raising the question about what they can expect from this Court, I note that the guideline range started out at 188 months. . . . [T]hat's what Congress saw fit as an appropriate sentence for individuals who deal in these quantities of narcotics.
>
> This Court has not only cut that down to the bottom of the guideline, but then taken into account the cooperation to go below that to the hundred-month range.
>
> . . . . .
>
> I mentioned the manner in which I arrived at that, and that is, to take . . . the guideline range, 151 to 188 months, and start with the very bottom of that guideline range and then to take into consideration the substantial assistance and take one-third off of that.
>
> So I think to the extent that you want some indication in dealing with your clients, current or future, that there is left some measure of certainty as to what you can expect from this Court should you choose to cooperate with the Government.
>
> . . . . .
>
> So if that provides you with any guidance for future cases, then I've addressed that point as well.

(R. 8 at 35–36.) The court then sentenced Roge to 100–months imprisonment.

When asked whether he objected to the court's finding of fact or to the manner in which sentence was pronounced, Roge's counsel stated no. After requesting voluntary surrender, though, counsel said:

> I just wanted to make one more comment about the last issue, and that is, as I said before, we all understand that there's no guarantees when the Government makes a recommendation. . . .
>
> But I think it's unfair to these defendants to let us know now that your policy is that it's to reduce the entire sentence by one-third based on their entire cooperation. Had we known that that was your policy and that therefore the Government's recommendations are in essence meaningless, it could have allowed us at the time of the plea to structure some other type of agree-

ment to take into consideration the Court's policies.

. . . . .

Obviously the world knows now what the Court's policy is, but I think as we stood before you several months ago, not knowing that policy, from my perspective, makes me look bad as a professional, because I'm trying to tell my client ... that a certain result is likely or probable.

Obviously there are never any guarantees, but if the Court knew at the time of the plea that it had this policy of reducing one-third, I think the Court should have told us. . . .

(R. 8 at 38–39.) The court responded that, as every defendant is advised at the time of a plea, the court is in no position to know the applicable sentence or guideline range until after the PSI is prepared. It is not prudent, the court continued, for a court to express its inclination when so many variables can occur between the time of a plea and sentencing. (R. 8 at 39–40.)

Appellant Delgado was sentenced on November 12, 1992, ten days after Cosgrove and Roge. He too was sentenced to 100–months imprisonment. Asked whether he objected to the manner in which sentence was pronounced, Delgado's counsel said, "I have no objection as to how sentence was imposed, your Honor." (R. 3 at 9.) The next day, however, Delgado filed a "Notice of Correction," stating that he should have responded that he did have an objection, but not stating the nature of his objection. In addition, appearing before the district court the day after sentencing, Delgado's counsel said that he wanted to make a correction for the record:

Yesterday at the time of the sentencing you inquired of me if I had any objection to the manner in which the sentence was imposed. And my comment was no.

I am correcting that to yes. And I am moving for the appointment of counsel for the purpose of appealing this sentence on behalf of Mr. Delgado.

(R. 4 at 13.) Delgado did not explain his objection, nor did the court inquire as to its basis.

## DISCUSSION

The record suggests that the district court may have followed a rigid, predetermined sentencing policy or practice in sentencing appellants. The court explained that it was calculating appellants' substantial assistance departures by taking one-third off the bottom of the applicable guideline range. (R. 8 at 12, 36.) The court stated that the same methodology would apply to defendants in future cases; thus, "there is left some measure of certainty as to what you can expect from this Court should you choose to cooperate with the Government." (R. 8 at 36.) The district judge's own statements thus lend support to appellants' contention that the judge employed a "rigid" sentencing policy in sentencing appellants. While appellants raise a serious question as to the legality of their sentences under § 5K1.1,[5] we do not reach the merits of appellants' argument because none of the appellants raised this issue in the district court.

### A. Cosgrove's Failure to Object in the District Court

The government argues that Cosgrove waived his objection to the district court's use of a sentencing policy. The record reflects that the district court did not disclose what is alleged to have been its sentencing policy until after Cosgrove was sentenced. Thus, on this record, it appears that Cosgrove did not know that he was being sentenced pursuant to a sentencing policy and, therefore, could not object to his sentence on

---

**5.** The Third Circuit recently addressed the propriety of following a sentencing policy or practice when departing from the sentencing guidelines under § 5K1.1. *United States v. King,* 53 F.3d 589 (3rd Cir.1995). In *King,* the district judge's practice was to decrease a defendant's guideline range by three levels when granting a § 5K1.1 motion for downward departure. *Id.* at 590. The Third Circuit held that the use of a

sentencing practice violates § 5K1.1. *Id.* at 591. The court explained that "both the language of [§ 5K1.1] and the guideline case law clearly proscribe these sentencing "practices" and instead mandate individualized, case-by-case consideration of the extent and quality of a defendant's cooperation in making downward departures under § 5K1.1." *Id.* at 592.

that ground. The government argues that Cosgrove nevertheless waived his objection by not raising it in his post-sentence motion. Cosgrove filed a motion to correct sentence pursuant to Fed.R.Crim.P. 35(c) but did not mention the alleged illegality of the court's sentencing policy.

■ A Rule 35 motion, however, would not have been the appropriate vehicle to raise this objection. Rule 35(c) allows the correction of a sentence only if "imposed as a result of arithmetical, technical, or other clear error." Because the error argued on this appeal does not fall within any of these categories, Cosgrove could not have presented it in a Rule 35 motion. Therefore, Cosgrove did not waive his objection by failing to raise it in his post-trial motion.

■ While this record does not reflect that Cosgrove waived his objection, he still has not presented it to the district court for a ruling. We are a court of review and generally do not address arguments raised for the first time on appeal. *Depree v. Thomas*, 946 F.2d 784, 793 (11th Cir.1991). We find no reason to depart from that rule here. The proper vehicle for Cosgrove to object to his sentence based on the alleged illegality of the district court's sentencing policy is a 28 U.S.C. § 2255 motion in the district court.

## B. *Roge's Failure to Object in the District Court*

The government contends that Roge waived his objection to the district court's use of a sentencing policy. Roge was sentenced immediately after the district court first disclosed his sentencing policy. The court reiterated its policy when sentencing Roge. (R. 8 at 35–36.) Roge's counsel specifically referred to the court's "policy" in objecting to the court's failure to disclose the policy at the time of Roge's plea. (R. 8 at 38–39.) Thus, unlike Cosgrove, Roge clearly was aware of the court's policy when he was sentenced. Yet Roge never objected to the use of a sentencing policy on the grounds raised on appeal. Therefore, Roge waived his objection. *United States v. Jones*, 899 F.2d 1097, 1103 (11th Cir.), *cert. denied*, 498 U.S. 906, 111 S.Ct. 275, 112 L.Ed.2d 230 (1990), *overruled on other grounds, United States v. Morrill*, 984 F.2d 1136 (11th Cir. 1993).

Roge contends that he made an express objection to the court's use of an undisclosed sentencing policy. He concedes that he did not use the words "due process" but argues that he nevertheless preserved his due process objection for review by "challeng[ing] the fundamental "fairness" of the court's conduct." (Appellants' Reply Br. at 5.) Specifically, at sentencing counsel said, "I think it's unfair to these defendants to let us know now" about the policy, (R. 8 at 38), and "I think the Court should have told us" about the policy at the time of the plea. (R. 8 at 39.)

■ These statements do not amount to an objection that following a sentencing policy violates due process. The district court cannot reasonably be charged with understanding these statements to allege a due process violation. Simply saying something is "unfair" does not suggest that it violates due process. Moreover, the statements challenge the fairness of *not disclosing* the policy at the time of Roge's guilty plea. On appeal, however, Roge challenges the propriety of *following* the policy in sentencing him.

■ Roge did not object based on the other ground raised on appeal either—that employing the sentencing policy violated 18 U.S.C. § 3553 and § 5K1.1. In fact, Roge's counsel focused almost exclusively on the court's failure to follow the government's recommendations, expressing frustration that the government's recommendations turned out to be "in essence meaningless." (R. 8 at 38). These statements cannot be construed as challenging the legality of the court's sentencing policy under § 3553 and § 5K1.1.

■ Because Roge waived his objections to the district court's use of a sentencing policy by failing to present them to the district court, we only consider his arguments under the plain error doctrine to avoid "manifest injustice." *United States v. Neely*, 979 F.2d 1522, 1523 (11th Cir.1992). We find no manifest injustice. Roge's 100-month sentence was well below the statutory maximum of life imprisonment and the guideline maxi-

**304**

mum of 188 months; indeed, his sentence was over four years less than the lowest sentence in the applicable guideline range.

### C. *Delgado's Failure to Object in the District Court*

 The government argues that Delgado waived his objection by failing to object in the district court. At his sentencing hearing, Delgado did not object to the district court's use of a sentencing policy. The day after he was sentenced, Delgado stated, both in a "Notice of Correction" and in appearing before the district court, that he should have objected to his sentence. But Delgado failed to state *any* basis for his objection. We agree with the government that such an objection is tantamount to no objection at all. *See Jones,* 899 F.2d at 1103 (explaining that failure to state grounds for objection results in waiver of objection).

Delgado's failure to object in the district court, however, does not necessarily mean that he waived his objection. On this record, we are unable to determine whether Delgado knew of the district court's sentencing policy when he was sentenced. Neither the district court nor Delgado's counsel makes any reference to the policy during Delgado's sentencing hearing. While the sentencing policy was disclosed ten days earlier when Delgado's co-defendants were sentenced, the record does not reflect whether Delgado knew of it when he was sentenced.

If Delgado was unaware of the district court's sentencing policy when he was sentenced, he cannot be faulted for failing to object to the use of the policy. Still, even if Delgado did not waive his objection, we will not address it without it first having been presented to the district court for a ruling. Therefore, if Delgado did not know of the district court's sentencing policy when he was sentenced, he may raise his objection in a § 2255 motion in the district court.

### CONCLUSION

Because appellants failed to present their objections to the district court and we find no plain error, we must affirm appellants' sentences.

AFFIRMED.