United States Court of Appeals,

Eleventh Circuit.

No. 96-6133.

UNITED STATES of America, Plaintiff-Appellee,

v.

Marc Alan SAWYER, Defendant-Appellant.

June 20, 1997.

Appeal from the United States District Court for the Southern District of Alabama. (No. 95-0111-001), Richard W. Vollmer, Jr., Judge.

Before HATCHETT, Chief Judge, ANDERSON, Circuit Judge, and LAY*, Senior Circuit Judge.

LAY, Senior Circuit Judge:

Marc Alan Sawyer robbed a Mobile branch of the First Alabama Bank on May 18, 1995. He walked in the bank, pointed a gun at a bank teller's head, and demanded money. When the teller crouched on the floor to protect herself, Sawyer yelled at her to get up. She did so and handed him the money, which he took and fled the scene, pursued by several bank customers. While fleeing, he turned back and shot at the crowd of customers; he did not hit anyone.

Sawyer was apprehended that same day. He pled guilty to bank robbery, in violation of 18 U.S.C. § 2113(a), and possession of a firearm during a violent crime, in violation of 18 U.S.C. § 924(c)(1). Sawyer told a probation officer that he robbed the bank because of drug-related financial problems, and expressed remorse. The Presentence Investigation Report (PSI) included a recommendation for a reduction for acceptance of responsibility under U.S.S.G. § 3E1.1. The government sought application of U.S.S.G. § 5K2.3, which allows departure "[i]f a victim or victims suffered psychological injury much more serious than that normally resulting from commission of the offense."

At the sentencing hearing, the district court asserted that it had earlier warned the parties of possible upward adjustments for bodily injury to a victim under U.S.S.G. § 2B3.1(b)(3), and reckless

*Honorable Donald P. Lay, Senior U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

endangerment during flight under U.S.S.G. § 3C1.2. In support of an upward departure under § 2B3.1(b)(3), the government put two bank employees on the stand, each of whom testified of their fright during the robbery. Neither had been physically harmed.

The district court found that the employees had "sustained bodily injury of a sufficient magnitude" to justify an upward adjustment under § 2B3.1(b)(3). It also imposed a two-level increase for reckless endangerment under § 3C1.2. The court declined to reduce Sawyer's offense level for acceptance of responsibility. Sawyer had not presented evidence of acceptance of responsibility aside from that contained in the PSI, and the court stated it would "not automatically accept the probation officer's recommendation that someone be given acceptance of responsibility merely because they have stated that they are sorry they committed the crime." Sawyer received a sentence of 97 months' imprisonment for the bank robbery and 60 months' imprisonment for the firearms conviction, for a total of 157 months, plus five years' supervised release. He appeals his sentence.

*Reckless Endangerment During Flight*

Section 3C1.2 of the Guidelines allows a court to increase a defendant's sentence by two levels for creation of a risk of death or serious bodily injury when fleeing from a law enforcement officer. The government did not present the testimony of any police officer in the area during Sawyer's flight, and it appears that no police officer was in sight when Sawyer fired his gun into the crowd following him. Nonetheless, the court stated that it did not believe that the defendant had to "be chased by a police officer" for § 3C1.2 to apply. Since the individuals following Sawyer were authorized to make a citizen's arrest, the court applied § 3C1.2.

Sawyer argues that the enhancement for reckless behavior under § 3C1.2 applies only when a defendant is fleeing from a law enforcement officer. We review this Guideline interpretation issue *de novo. United States v. Brame,* 997 F.2d 1426, 1427-28 (11th Cir.1993).

The plain language of § 3C1.2 does not support the interpretation by the district court. It expressly states that the increase is to be applied when a defendant "recklessly create[s] a substantial risk of death or serious bodily injury to another person *in the course of fleeing from a law*

*enforcement officer.*" U.S.S.G. § 3C1.2 (emphasis added). An individual's ability to make a citizen's arrest does not render that person a "law enforcement officer." Thus, we hold that this section of the Guidelines does not apply unless the defendant is actually fleeing from a law enforcement officer. *Cf. United States v. Hayes,* 49 F.3d 178, 183 (6th Cir.1995) ("[T]he origins of § 3C1.2 suggest that it requires that a defendant be aware that he is fleeing from a law enforcement officer (behavior that could be viewed as an obstruction of justice) versus fleeing from a person pursuing him for different reasons.").[1]

*Bodily Injury Under § 2B3.1(b)(3)*

At sentencing, the government requested that Sawyer receive an upward departure under § 5K2.3 for extreme psychological injury. However, the district court applied the Guideline provision for bodily injury, § 2B3.1(b)(3). Section 2B3.1 governs the sentencing of robbery generally, and allows an increase of two levels if any victim sustained bodily injury. The bank teller who gave Sawyer the money testified that the experience has affected her by making her "a little bit more observant of what's going on around [her]." She also stated that the day of the robbery "will always stay with [her] the rest of [her] life." She was not physically injured, did not seek medical or psychological treatment, and spoke once with a counselor the bank provided. Another bank teller present during the robbery testified that she lost two nights of sleep, and that she continues to feel vulnerable. Like her colleague, she was not physically injured and did not seek medical or psychological treatment.

We have no difficulty in concluding that the court erred in applying the bodily injury guideline. Even assuming that any psychological injury resulted from Sawyer's actions, psychological injury by itself cannot support an enhancement under § 2B3.1(b)(3) in the scenario presented to this court. The Guidelines define "bodily injury" as "any significant injury; *e.g.,* an injury that is painful and obvious, or is of a type for which medical attention ordinarily would be

---

[1]*Hayes* addressed the question of whether § 3C1.2 applies when a law enforcement officer is following the offender, but the evidence is ambiguous on whether the defendant knew an officer was in pursuit. We do not address this issue, for the question presented to us is much simpler—whether § 3C1.2 applies when there is no officer around.

sought." U.S.S.G. § 1B1.1, comment. (n.1(b)). This language, when read in the presence of § 5K2.3 allowing an enhancement for "extreme psychological injury," is a clear indication to us that at least in this case, psychological injury alone is not enough to warrant the two-level increase applied by the district court. *See United States v. Nomeland,* 7 F.3d 744, 748 (8th Cir.1993) (indicating that "the offense conduct guideline for armed robbery addresses only bodily injury to victims," in contrast with § 5K2.3, which covers extreme psychological injury); *cf. United States v. Lanzi,* 933 F.2d 824, 827 (10th Cir.1991) (affirming a district court's refusal to apply § 2B3.1 on psychological injury alone, but also refusing to decide "whether purely psychological injury can ever be "bodily injury' within the meaning of the guidelines"). *But see United States v. Reed,* 26 F.3d 523, 530-31 (5th Cir.1994) (affirming application of § 2B3.1(b)(3)(C) for permanent or life-threatening bodily injury where the victim suffered from severe post-traumatic stress syndrome).[2]

*Conclusion*

We conclude that the district court erred in applying § 2B3.1(b)(3) and § 3C1.2 in determining Sawyer's sentence. Sawyer also argues the district court erred in refusing to depart downward for acceptance of responsibility under § 3E1.1. We vacate the sentence and remand for resentencing; we leave resolution of the defendant's request to more fully address the issue of acceptance of responsibility to the discretion of the district court.

VACATED and REMANDED.

---

[2]As in the *Lanzi* case, we do not decide whether a set of facts could ever arise where psychological or psychiatric injury would render use of § 2B3.1 appropriate. We certainly are not presented with such a situation here.