[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
07/14/99
THOMAS  K. KAHN
CLERK

No. 97-6849

D. C. Docket No. Cr-95-111-1-RWV

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

MARC ALAN SAWYER,

Defendant - Appellant.

Appeal from the United States District Court
for the Southern District of Alabama

**(July 14, 1999)**

Before MARCUS, Circuit Judge, HILL, Senior Circuit Judge, and FERGUSON*,
District Judge.

_____
*Honorable Wilkie D. Ferguson, Jr., U. S. District Judge for the Southern District of Florida, sitting
by designation.

HILL, Senior Circuit Judge:

In 1997, a panel of this Court vacated the 157 month sentence of Appellant Marc Alan Sawyer and remanded the case to the district court for re-sentencing. *United States v. Sawyer,* 115 F.3d 857 (11th Cir. 1997). We find we must do so again.

## I.

Sawyer is an admitted bank robber. In 1995, he walked into a Mobile, Alabama bank, his nose and mouth covered by a bandana mask, carrying a loaded pistol. Screaming loudly that he wanted money, Sawyer jumped up on a table near the teller cages, raised his gun and pointed it at teller Sharon Malone.[1] She went down on the floor in fear, crouching to protect herself. Sawyer pointed the gun at Malone's head, and, in an out of control manner, screamed at her to get off the floor and give him money. Malone obeyed. By this time Sawyer had moved and was standing on top of the counter in front of Malone's teller window. She handed him the money. Sawyer then stepped in front of Malone and jumped over the counter away from her. Hysterical by this time, Malone lost control of her bladder. Sawyer then fled the bank,

---

[1] Bank customer service representative and vault custodian Christy Bailey was seated within inches of the Malone. At hearing, she testified that she had been present during a bank robbery before. In that situation, a man had entered the bank, handed the teller a note, and left before any other bank employee was aware of danger. Bailey testified that, in this case, due to Sawyer's screaming and jumping up on tables and teller counters, every person in the bank was immediately aware that a bank robbery was in progress. She claimed that everyone was very frightened.

chased by several bank customers. Sawyer turned, fired his gun at them, and missed.

Off-duty sheriff deputy John Sudduth heard the gunshot from his nearby apartment. Dressed in civilian clothes, he grabbed his gun, jumped in his marked police car and advised the police radio operator that he was in pursuit of a bank robbery suspect. Almost immediately, he saw Sawyer walking north on College Road and followed him in his vehicle. When Sawyer ducked into a yard, Sudduth gave chase on foot. He found him stuffing money into his pants. Sudduth radioed the police operator that he had the suspect in sight, giving Sawyer's description. Sudduth then pointed his gun at Sawyer, identified himself as a law enforcement officer, and ordered him not to move. Instead Sawyer fled over a tall wooden fence. Again Sudduth gave chase and notified the police operator. Moving parallel through backyards, Sudduth located Sawyer, pointed his gun at him, and ordered him to get on the ground. This time Sawyer complied and was arrested.

## II.

Sawyer pleaded guilty to armed bank robbery in violation of 18 U.S.C. §§ 2113(a) and (d), and possession of a firearm during a violent crime in violation of 18 U.S.C. § 924(c)(1). The Pre-sentence Investigation Report (PSR) recommended no upward adjustments in Sawyer's sentence; it recommended a three-level downward

adjustment for acceptance of responsibility, U.S.S.G. § 3E1.1, resulting in a final adjusted offense level of nineteen.

After hearing[2] at sentencing, the district court refused to grant the PSR recommendation for acceptance of responsibility. In addition, it made two upward adjustments: two levels for a bodily injury of a sufficient magnitude to a victim, U.S.S.G. § 2B3.1(b)(3); and two levels for reckless endangerment during flight, U.S.S.G. § 3C1.2. Based upon the final adjusted offense level of twenty-six, the district court sentenced Sawyer to 157[3] months imprisonment plus five years supervised release.

Sawyer appealed his sentence. *Sawyer,* 115 F.3d at 857. The previous panel concluded that the district court had erred in applying U.S.S.G. § 2B3.1(b)(3), the bodily injury adjustment, and U.S.S.G. § 3C1.2, the reckless endangerment adjustment. It left resolution of U.S.S.G. § 3E1.1, the acceptance of responsibility adjustment, to the discretion of the district court. The panel then vacated Sawyer's sentence and remanded to the district court for re-sentencing.

---

[2] At this first sentencing hearing, the district court heard testimony from bank employees Malone and Bailey. Upon advice of his counsel, Sawyer did not testify.

[3] This figure is composed of ninety-seven months on the bank robbery count and sixty months on the firearms count.

After hearing[4] at re-sentencing, the district court in its discretion again refused to depart three levels downward for acceptance of responsibility. U.S.S.G. § 3E1.1. It removed, pursuant to the mandate of the panel opinion, its two-level increase for bodily injury of a sufficient magnitude to a victim. U.S.S.G. § 2B3.1(b)(3). It substituted a two-level increase for extreme psychological injury to a victim. U.S.S.G. § 5K2.3. Contrary to panel opinion mandate, however, it reinstated its two-level increase for reckless endangerment during flight. U.S.S.G. § 3C1.2. As the same final adjusted offense level of twenty-six resulted, Sawyer was again re-sentenced to 157 months' imprisonment plus five years supervised release.

## III.

## A.

This is, as noted, the second visit of this sentencing scenario in our court. It presents a tale of no little frustration on the part of the trial judge, attempting to impose an appropriate sentence and perceiving himself hindered by the Sentencing Guidelines.

To analyze the situation correctly, we must start with the established premise that, whether palatable or not, the Guidelines control sentencing. Before Guidelines,

---

[4] At this second sentencing hearing, the district court again heard testimony from the two bank employees, Malone and Bailey. It also heard testimony from the police officer, Sudduth, and defendant Sawyer.

a sentencing judge reviewed the crime and the criminal, and weighing pertinent facts, crafted that judge's appropriate sentence.

Under the Guidelines, the crime and the criminal's characteristics are consulted, but the weight to be given various considerations are programmed; the Guidelines trump judicial evaluation.

B.

In this case Sawyer fled the bank, chased by several bank customers. He turned, fired his gun at them, and missed. After running through an apartment complex, he then began walking down College Road where he was spotted by off-duty police officer Sudduth. When Sudduth's marked police vehicle began following behind him, Sawyer cut through a yard, followed by Sudduth on foot. When first confronted by the off-duty officer, however, Sawyer refused to stop and jumped over a fence. Finally, in response to Sudduth's command, Sawyer stopped and laid on the ground.

Section 3C1.2 of the Guidelines reads in full: "[i]f the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer, increase by 2 levels." The previous panel found that the plain language of U.S.S.G. § 3C1.2 did not support its application by the district court, *Sawyer,* 115 F.3d at 859, as that section did not apply unless the

defendant was actually fleeing from a law enforcement officer. *Id.* Upon remand at re-sentencing, the district court again applied U.S.S.G. § 3C1.2, and again increased Sawyer's sentence by two levels for reckless endangerment during flight.

Here the district judge has undertaken to deal with what the defendant did after he robbed the bank aided by the threat of an armed gun. Sawyer fled; he was pursued; he fired live ammunition at his pursuers. The Guidelines specifically address the result of a defendant's shooting at others in the course of fleeing a pursuing law enforcement officer. U.S.S.G. § 3C1.2. The circumstances here existing neatly fit the predicted circumstance of the Guidelines, except for one fact. There was no law enforcement officer, no policeman, no highway patrolman, no marshal, no sheriff, no deputy, indeed, not even a "meter reader," among the targets of the fleeing felon when he exited the bank and turned and fired at pursuing bank customers. It appears that the Sentencing Commissioners assumed that the pursuers of bank robbers would be law enforcement officers, envisioning "cops and robbers" but not "citizens and robbers."

We apprehend that, when faced with this frustration, the district judge erroneously sought to cram the facts that existed into the facts envisioned by the Sentencing Commission. He sought to compute a sentence predicated upon shooting at a law enforcement officer without such officer's presence. In the first appearance

7

of this case in this court, *Sawyer,* 115 F.3d at 859, we held that he cannot do that. His attempt to do so, contrary to the remand, is, again, error.

We know what is to be done where it is found that a defendant has shot at others while fleeing a pursuing law enforcement officer. We find no Guideline reference, however, to firing pistol shots at non-officer citizens. This appears to be an "aggravating . . . circumstance" that the Sentencing Commission did "not adequately take into consideration . . . in formulating" the Guidelines. 18 U.S.C. § 3553(b). We therefore must vacate and remand Sawyer's sentence to the district court with instructions to consider 18 U.S.C. § 3553(b), in its discretion.

## C.

A district court's determination that a defendant is not entitled to acceptance of responsibility will not be set aside unless the facts in the record clearly establish that a defendant has accepted personal responsibility. *United States v. Paslay*, 971 F.2d 667, 674 (11th Cir. 1992)(citing *United States v. Howard,* 923 F.2d 1500, 1505 (11th Cir. 1991)). The defendant bears the burden of clearly demonstrating acceptance of responsibility and must present more than just a guilty plea. *United States v. Cruz*, 946 F.2d 122, 126 (11th Cir. 1991).

At the first sentencing hearing, the district judge cautioned the Sawyer that "as a result of the testimony that I've heard today from the victims as well as my review

of this [acceptance of responsibility] adjustment, this Court does not automatically accept the probation officer's recommendation that someone be given acceptance of responsibility merely because they have stated that they are sorry they committed the crime and they make their admission." Thereafter the district court gave Sawyer ample opportunity to present evidence at the first sentencing hearing of his acceptance of responsibility. Aside from that contained in the PSR, he did not do so. At the second sentencing, Sawyer asked to address the court. He stated: "I'd like to apologize to Mrs. Malone and Mrs. Bailey. I realize that, you know, what, that what I did was wrong. I was under the influence at the time. And I do apologize to the victims and this Court." Sawyer concluded by stating that he had nothing further to add.

> Toward the end of the hearing, the district court made this observation:

> . . . The Court cannot read the mind of the Defendant. I think the Defendant is certainly sincere in the fact that he hopes to get a three-level decrease as a result of this. The Court made its finding originally as to what his attitude was at that time. I would not say that he has not changed his attitude at this time, but the Court's opinion is that the finding that the Court made at the original hearing was supported by evidence, and the Court would not consider his change in attitude at this time.

> Sawyer argues that, prior to original sentencing, the probation officer who interviewed him found that he expressed remorse and recommended a three-point downward adjustment. Sawyer claims the government did not object to this

determination. Next Sawyer contends that he expressed genuine remorse at re-sentencing and "could have done nothing more to convey his regret."

We disagree. We have closely studied this entire record. Sawyer did not plead guilty until three months after his arrest. In addition, the record is devoid of facts sufficient to clearly establish that Sawyer accepted personal responsibility for his actions. Without them, the district court's determination that he is not entitled to an acceptance of responsibility adjustment will not be overturned. *Paslay*, 971 F.2d at 674.

## D.

Sawyer claims that the evidence was not sufficient to support an upward departure for extreme psychological injury. He also claims he did not have notice that such a departure was contemplated.

Approximately seven weeks prior to sentencing, the government filed a notice of its intent to seek upward departure[s]. It requested that Sawyer receive a two-level increase for extreme psychological injury. At sentencing, the district court did in fact increase Sawyer's sentence by two levels. It did this, however, not by applying the extreme psychological guideline requested by the government, U.S.S.G. § 5K2.3, but by applying the bodily injury guideline, U.S.S.G. § 2B3.1(b)(3). This was found to be in error on appeal. *Sawyer,* 115 F.3d at 859-60.

10

Upon remand at re-sentencing, the Court made the following statement:

> But what I'm saying is that the Court would depart upward pursuant to 5K2.3 and find extreme psychological injury based on the testimony of the witnesses who testified in this case. Ms. Bailey, the Court finds, was as perturbed this time as she was the first time and is upset, and the effect on her continues. And the Court finds that in the Court's opinion that this condition is such that it is unusual and is covered under the particular considerations of 5K2.3 in finding an extreme psychological injury based on the testimony originally presented and presented today, that she has sustained psychological effects must greater than what would be expected in a circumstance of this type.
> The Court does not find that about Ms. Norton (sic). The Court finds that Ms. Norton (sic) has, I believe, recovered at this time and perhaps did not sustain the level.

The government argues that, as Sawyer complains for the first time on appeal that the evidence was not sufficient to support an upward departure for extreme psychological injury, we must review this claim only for plain error to avoid manifest injustice. *United States v. Cosgrove*, 73 F.3d 297 (11th Cir. 1996). Sawyer argues that we must review the district court's decision to depart from the sentencing guidelines under the less stringent abuse of discretion standard. *Koon v. United States*, 116 S.Ct. 2035, 2047-48 (1996).

A departure for extreme psychological injury is warranted if it is "much more serious than that normally resulting from commission of the offense" as when there is a "substantial impairment of the intellectual, psychological, emotional, or behavioral functioning of a victim . . . of an extended . . . duration, and when the

11

impairment manifests itself . . . by changes in behavior patterns." U.S.S.G. § 5K2.3. Here the district court considered the testimony of Ms. Bailey to be indicative of guideline requirements. Ms. Bailey testified that, more than two and one-half years after the robbery, she still does not feel safe at work, is especially cautious entering and leaving the bank, and has restricted her daily activities. Upon our extensive review of the record, even under the lesser standard of review espoused by Sawyer, we find that the district court did not abuse its discretion in departing two levels upward for extreme psychological injury. *See United States v. Price*, 65 F.3d 903 (11th Cir. 1995)(departure upheld where victims were more cautious of their surroundings, installed home security systems, and restricted activities outside the home).

## IV.

Based upon the foregoing, we conclude that the district court ignored the mandate of the previous panel opinion and erroneously re-applied U.S.S.G. § 3C1.2, reckless endangerment during flight, in determining Sawyer's sentence. For this reason, therefore, we must again vacate Sawyer's entire sentence and remand to the district court, this time with instructions to consider in its discretion, 18 U.S.C. § 3553(b) . We add, however, that the district court did not abuse its discretion in refusing to depart downward under U.S.S.G. § 3E1.1, for acceptance of responsibility,

12

nor did not err in its application of U.S.S.G. § 5K2.3, for extreme psychological injury.

SENTENCE VACATED and REMANDED with INSTRUCTIONS.