[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 11, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-11344
Non-Argument Calendar

_____

D. C. Docket No. 06-00072-CR-FTM-29-SPC

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOSE LUIS SALAZAR-FLORES,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(January 11, 2008)**

Before HULL, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

Jose Luis Salazar-Flores appeals his 188-month sentence for possession with

intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(viii). After review, we affirm.

## I. BACKGROUND

Salazar-Flores was arrested after he delivered methamphetamine to an undercover Drug Enforcement Agency ("DEA") agent. Salazar-Flores, accompanied by Jose Ascencion-Perez, drove his pickup to a prearranged meeting place at a Cracker Barrel restaurant. Salazar-Flores indicated to the DEA agent that he was the person delivering the methamphetamine. Salazar-Flores walked the agent to another car driven by Arbey Medina-Flores, Salazar-Flores's cousin. Salazar-Flores opened a rear passenger door and motioned to the DEA agent that the drugs were in the back. When the DEA agent did not see any drugs, Medina-Flores stated that the drugs were behind the cushioning of a child car seat and lifted the cushioning. The DEA agent saw several cylindrical objects wrapped in cellophane.

Using a razor blade produced by Salazar-Flores, the DEA agent opened one of the packages and found a brown, powdery substance. After Salazar-Flores, Medina-Flores and Ascencion-Perez were arrested, lab reports confirmed that the substance consisted of 2.144 kilograms of a methamphetamine mixture.

At his plea hearing, Salazar-Flores indicated that he wished to enter a guilty

plea, but also maintained essentially that he was a drug mule and that, although he knew he was delivering drugs hidden in the child car seat, he did not know that the drug was methamphetamine. Defense counsel expressed concern that there might not be a factual basis for a guilty plea and that his client might not want to persist in his plea. After a recess, Salazar-Flores entered a not guilty plea.

Salazar-Flores, Medina-Flores and Ascencion-Perez were tried together. Salazar-Flores's defense was that he was innocent because, although he suspected there might be an illegal substance in the child car seat, he did not know for sure and he did not know that the substance was methamphetamine. Salazar-Flores called co-defendant Ascencion-Perez as a defense witness. Ascencion-Perez testified that he and Salazar-Flores had gone to the Cracker Barrel restaurant for work and were unaware of the drugs in the child car seat.

In addition, Salazar-Flores testified on behalf of his cousin Medina-Flores. Specifically, Salazar-Flores testified that when he met the undercover agent, he thought he was delivering the child car seat. Salazar-Flores also testified that he did not know there were drugs in the car seat and that he thought the person to whom he was delivering the car seat would give him work in construction or painting. The jury convicted Salazar-Flores and his co-defendants.

Salazar-Flores's PSI recommended a total adjusted offense level of 36,

which included a two-level enhancement for obstruction of justice. The PSI also recommended that Salazar-Flores not receive an acceptance of responsibility reduction. Based on a total offense level of 36 and a criminal history category of I, the PSI recommended an advisory guideline range of 188 to 235 months' imprisonment. The statutory mandatory-minimum sentence was ten years' imprisonment. Salazar-Flores objected to the PSI, arguing, inter alia, that he was entitled to an acceptance of responsibility reduction. In the addendum to the PSI, the probation officer noted that Salazar-Flores declined to participate in an interview after his conviction.

At sentencing, Salazar-Flores argued that his statements during his plea hearing showed that he had accepted responsibility and that he was an uneducated man who had been manipulated and influenced by others. The district court overruled Salazar-Flores's objection, finding that Salazar-Flores's later trial testimony denying liability was inconsistent with his statements at the plea hearing and indicated that Salazar-Flores did not accept responsibility.

Addressing the 18 U.S.C. § 3553(a) sentencing factors, Salazar-Flores argued that (1) he had only a second grade education, (2) he had come to the United States only to find work and a better place for himself, (3) he had been manipulated by a large drug organization, and (4) that he was "at the bottom" of

4

that drug organization. Salazar-Flores also pointed out that he had no prior criminal history; had a wife and four children; and, as a removable alien, would be held in an INS prison and returned to Mexico after he finished his sentence. Salazar-Flores urged the district court to impose a ten-year sentence. In response, the government noted that (1) Salazar-Flores had testified on Medina-Flores's behalf at trial, (2) there was evidence that the Cracker Barrel deal was not the first transaction and (3) the amount of drugs involved did not warrant a sentence below the advisory guidelines range.

The district court stated that it considered all of Salazar-Flores's arguments and the § 3553(a) factors, but found that the only mitigating factor was Salazar-Flores's lack of a prior criminal history. Additionally, the district court noted that Salazar-Flores was in the country illegally, was involved in the distribution of a substantial amount of methamphetamine, even if he was just a "mule," and that he had lied about his involvement. The district court imposed a 188-month sentence. Salazar-Flores filed this appeal.

## II. DISCUSSION

### A. Acceptance of Responsibility Reduction

On appeal, Salazar-Flores argues that the district court clearly erred in not providing a two-level acceptance of responsibility reduction, pursuant to

U.S.S.G. § 3E1.1.[1]

A defendant is entitled to a two-level reduction if he "clearly demonstrates acceptance of responsibility for his offense." U.S.S.G. § 3E1.1(a). The commentary to § 3E1.1 indicates that in the "rare situation[]" that a defendant proceeds to trial "to assert and preserve issues that do not relate to factual guilt," the defendant may be entitled to an acceptance of responsibility reduction if his "pre-trial statements and conduct" demonstrate that he has accepted responsibility. U.S.S.G. § 3E1.1 cmt. n.2. However, that commentary also provides that a defendant who denies the "essential factual elements of guilt" at trial is not entitled to an acceptance of responsibility reduction. Id.[2]

Here, the district court did not clearly err in finding that Salazar-Flores did

_____

[1]We review a district court's factual findings concerning acceptance of responsibility for clear error. United States v. Williams, 408 F.3d 745, 756 (11th Cir. 2005). "A district court's determination that a defendant is not entitled to acceptance of responsibility will not be set aside unless the facts in the record clearly establish that a defendant has accepted personal responsibility." United States v. Sawyer, 180 F.3d 1319, 1323 (11th Cir. 1999).

[2]The relevant commentary to § 3E1.1 states in full:
This adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse. Conviction by trial, however, does not automatically preclude a defendant from consideration for [the acceptance of responsibility] reduction. In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial. This may occur . . . where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt . . . . In each such instance, however, a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct.
U.S.S.G. § 3E1.1 cmt. n.2 (emphasis added).

6

not accept responsibility for his drug trafficking offense. Salazar-Flores pled not guilty and maintained his innocence during trial. His defense attempted to attack the essential scienter element of his offense. He did not go to trial to assert and preserve issues unrelated to his factual guilt. Thus, Salazar-Flores's decision to go to trial does not present one of the "rare situations" noted in the commentary to § 3E1.1 in which his entitlement to acceptance of responsibility can be demonstrated by his admission during his plea hearing that he knew he was delivering drugs. Under the circumstances, the record does not clearly show that Salazar-Flores accepted responsibility for his offense.

## B.    Minor Role Reduction

Salazar-Flores argues for the first time on appeal that he should have received a role reduction because he was a mere drug "mule."[3]

If the defendant was a minor participant in the criminal activity, the district court decreases the offense level by two levels. U.S.S.G. § 3B1.2(b). A minor participant is one "who is less culpable than most other participants, but whose role could not be described as minimal." U.S.S.G. § 3B1.2 cmt. n.5. If the defendant

---

[3]Ordinarily, we review a district court's determination of a defendant's role in the offense for clear error. United States v. De Varon, 175 F.3d 930, 937 (11th Cir. 1999). However, because Salazar failed to request a minor-role reduction at sentencing, we review only for plain error. See United States v. Camacho-Ibarquen, 410 F.3d 1307, 1315 (11th Cir. 2005) (applying plain error review to sentencing issues not raised before the district court).

was a minimal participant in the criminal activity, the district court decreases the offense level by four levels. U.S.S.G. § 3B1.2(a). A minimal participant is one who "plays a minimal role in concerted activity"; this phrase "is intended to cover defendants who are plainly among the least culpable of those involved in the conduct of a group." U.S.S.G. § 3B1.2 cmt. n.4. The defendant has the burden of establishing his mitigating role in the offense by a preponderance of the evidence. De Varon, 175 F.3d at 939.

Two principles guide a district court's consideration: (1) the court must compare the defendant's role in the offense with the relevant conduct attributed to him in calculating his base offense level; and (2) the court may compare the defendant's conduct to that of other participants involved in the offense. Id. at 940-45. When the relevant conduct attributed to a defendant is identical to his actual conduct, he cannot prove he is entitled to a role reduction simply by pointing to some broader scheme for which he was not held accountable. Id. at 941.

Here, the record does not suggest that it was error, let alone plain error, to deny Salazar-Flores a role reduction. The district court calculated Salazar-Flores's offense level using the amount of drugs found in the child car seat. Thus, Salazar-Flores's relevant conduct and his actual conduct are identical, and he was not held accountable for the larger drug conspiracy for which he claims to have worked

8

only as a mule.  Furthermore, the over two kilograms of methamphetamine mixture found in the car seat is a substantial amount of drugs.

In addition, Salazar-Flores appears equally culpable with the other participants in the drug transaction at the Cracker Barrel, namely his co-defendants.  See id. at 944 (explaining that it is possible that some conspiracies will have no minor or minimal participants and that the district court should compare the defendant's role only to the other identifiable participants in the relevant conduct and that "[t]he conduct of participants in any larger criminal conspiracy is irrelevant").  From the evidence presented at trial and recounted in the PSI, Salazar-Flores met with the undercover DEA agent, identified himself as the person who would deliver the drugs and escorted the DEA agent to the car where the drugs were hidden.[4]  He also handed the DEA agent a razor blade and asked him if he wanted to verify the quality of the drugs.  We cannot say, under these facts, that Salazar-Flores was entitled to a role reduction.[5]

## C.    Reasonableness

---

[4]We note that the government presented evidence at trial from which a reasonable inference could be drawn that Salazar-Flores was the person identified only as "Chulucke," who arranged the drug transaction by telephone and claimed he could arrange future deliveries.  However, even if we disregard this evidence, Salazar-Flores's role in the Cracker Barrel transaction was not minor or minimal.

[5]Because Salazar-Flores was not entitled to a role reduction, his argument that he was entitled to a three-level reduction under U.S.S.G. § 2D1.1(a)(3), which is contingent upon receiving a role reduction, is also without merit.

Salazar-Flores contends that his 188-month sentence is unreasonable because the district court did not adequately consider the § 3553(a) factors.[6]

After United States v. Booker, 543 U.S. 220, 125 S. Ct. 738 (2005), a district court, in determining a reasonable sentence, must consider the correctly calculated advisory guidelines range and the § 3553(a) factors. United States v. Talley, 431 F.3d 784, 786 (11th Cir. 2005).[7] Although the district court must consider the § 3553(a) factors, "nothing in Booker or elsewhere requires the district court to state on the record that it has explicitly considered each of the § 3553(a) factors or to discuss each of the § 3553(a) factors." United States v. Scott, 426 F.3d 1324, 1329 (11th Cir. 2005). "The weight to be accorded any given § 3553(a) factor is a matter committed to the sound discretion of the district court." United States v. Williams, 456 F.3d 1353, 1363 (11th Cir. 2006).

---

[6]In Gall v. United States, the Supreme Court stated that its "explanation of 'reasonableness' review in the Booker opinion made it pellucidly clear that the familiar abuse-of-discretion standard of review now applies to appellate review of sentencing decisions." Gall v. United States, No. 06-7949, ___ U.S. ___, ___ S. Ct. ___, 2007 WL 4292116, at *6 (Dec. 10, 2007). The Supreme Court further explained that "[t]he uniqueness of the individual case . . . does not change the deferential abuse-of-discretion standard of review that applies to all sentencing decisions." Id. at *8.

[7]The § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with educational or vocational training or medical care; (6) the kinds of sentences available; (7) the sentencing guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwarranted sentencing disparities; and (10) the need to provide restitution to victims. See 18 U.S.C. § 3553(a).

We have already concluded that the district court considered the correctly calculated advisory guidelines range. Furthermore, although the district court did not discuss each factor individually, it did state that it had considered the § 3553(a) factors. The district court also stated that it had considered Salazar-Flores's arguments in mitigation, which included, among others, his assertions about his limited education, his limited involvement in the transaction and his immigration status, factors he now argues the district court inadequately considered. The district court concluded that the only truly mitigating factor was Salazar-Flores's lack of a criminal history and placed greater weight on the large amount of drugs involved and Salazar-Flores's willingness to lie at trial about his involvement in the offense. We cannot say that the district court abused its discretion in weighing the various § 3553(a) factors or that the 188-month sentence, at low end of the advisory guidelines range, was outside the range of reasonable sentences from which the district court could choose.

**AFFIRMED.**