UNITED STATES, Appellee,

v.

Julio Cesar PADIN-TORRES,
Defendant, Appellant.

No. 92–1074.

United States Court of Appeals,
First Circuit.

Heard Sept. 9, 1992.

Decided March 16, 1993.

---

Guillermo J. Ramos–Luina with whom Harry Anduze Montano, Hato Rey, PR, and Maria H. Sandoval, Santurce, PR, were on brief, for defendant, appellant.

Luis A. Plaza, Asst. U.S. Atty., with whom Daniel F. Lopez Romo, San Juan, PR, U.S. Atty., was on brief, for appellee.

Before BREYER, Chief Judge, ALDRICH, Senior Circuit Judge, and BOUDIN, Circuit Judge.

BOUDIN, Circuit Judge.

Defendant Julio Cesar Padin Torres ("Padin") pleaded guilty to three counts of an indictment for offenses related to his operation of a mortgage lending institution. Padin was sentenced to prison and ordered to pay $825,000 in restitution to the govern-

ment. He now appeals, challenging these sanctions. For the reasons that follow, we modify the restitution order and otherwise affirm.

Padin was charged in a thirteen-count indictment with conversion of federal funds, mail fraud, submission of false statements, and obstruction of justice. 18 U.S.C. §§ 641, 1341, 1001, 1515. The charges grew out of Padin's operation of Prudential Mortgage Corporation ("Prudential"), a mortgage lender participating as an "issuer" of securities guaranteed by the Government National Mortgage Association, commonly known as "Ginnie Mae." In addition to managing the corporation, Padin was Prudential's president and principal stockholder.

In accordance with its agreement with Ginnie Mae, Prudential was required to make monthly payments of principal and interest to holders of securities issued by Prudential and guaranteed by Ginnie Mae. Prudential was also obligated to turn over to individual investors lump sum payments by the federal government for defaulted government-insured mortgages issued by Prudential. Beginning in 1980 and continuing through 1987 Padin, in violation of the agreement with Ginnie Mae, withheld payment of the lump sums collected from the federal government on defaulted mortgages and owed to individual investors. A portion of the funds was used to cover the monthly dividends owed to all of Prudential's Ginnie Mae investors, with the remainder being diverted to corporate and personal bank accounts.

Padin masked the scheme by representing to the government that the monies paid for defaulted mortgages were being passed onto investors. At the same time, he led investors to believe that the mortgages in default were still alive. The fraud came to light when Prudential began to default on the monthly dividends. The resulting loss to the government, excluding collateral expenditures, totaled approximately $11.5 million, the amount paid out to Ginnie Mae insured investors to cover Prudential's default.

Padin entered an initial plea of not guilty but later changed his plea to guilty on one count each of conversion of federal funds, mail fraud, and the filing of false statements. The remaining counts were dismissed pursuant to a plea agreement. As required by Rule 11, the district court conducted a change of plea hearing. Fed. R.Crim.P. 11. Before accepting his guilty plea, the district court advised Padin, among other things, that he was subject to a maximum total fine of $21,000—$1,000 on the mail fraud count and $10,000 each on the conversion and false statement counts. At no time during the plea hearing did the district court mention that an order of restitution was also a possibility.

The sentencing hearing which followed later was largely consumed by Padin's efforts to establish that much of the diverted funds were used to keep Prudential afloat and only a small portion of the total was diverted to Padin's personal use. The court then imposed sentence. The sentence included a 15–year term of imprisonment and an order compelling Padin to pay $852,-000 in restitution to the government. This appeal ensued.

Padin first contends that the district court in imposing sentence relied on irrelevant and mistaken information. *See United States v. Curran*, 926 F.2d 59, 61 (1st Cir.1991) (defendant has right not to be sentenced on the basis of false information). Padin claims that the court improperly considered allegations that he withheld disclosure of accounting ledgers subpoenaed by the government, and that the amount of losses claimed by the government was unsupported.

■■■ A trial court has very broad discretion to decide what information is relevant for sentencing purposes. *United States v. Geer*, 923 F.2d 892, 897 (1st Cir. 1991). The so-called "allegations"—that important ledgers were missing—were supported by the testimony of a government auditor, who further stated that the government's audit was hampered by the lack of access to the documents. Padin's failure to produce the requested ledgers or plausibly account for their whereabouts

was a relevant circumstance that the district court could consider in imposing sentence. *See Roberts v. United States,* 445 U.S. 552, 100 S.Ct. 1358, 63 L.Ed.2d 622 (1980) (trial court may properly consider as a sentencing factor defendant's refusal to cooperate with law enforcement officials).

■ As to the amount of government losses, Padin did not deny that the government had paid $11.5 million to Ginnie Mae insured investors to cover Prudential's default. Rather, Padin claimed that this figure overstated the loss to the government because, according to Padin, he used some of the converted federal funds to sustain mortgages that would otherwise have fallen into default. As the district court pointed out, however, the number of would-be defaults, if any, could only be determined by reference to the ledgers which Padin failed to provide. Under these circumstances, the auditor's testimony as to the basic loss of $11.5 million was sufficient. *See United States v. Zuleta–Alvarez,* 922 F.2d 33, 36 (1st Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2039, 114 L.Ed.2d 123 (1991).

■ Finally, Padin takes exception to the district judge's reliance on a Sentencing Guidelines work sheet that was not disclosed to Padin until after sentence was imposed. Although Padin's offense was not governed by the Sentencing Guidelines, the district judge permissibly looked to certain guidelines factors in determining Padin's sentence. *See United States v. Twomey,* 845 F.2d 1132, 1135 (1st Cir.1988). The work sheet reflects that the district judge determined that Padin had obstructed justice and abused a position of trust, and that Padin was given no credit for acceptance of responsibility. The obstruction finding was based on Padin's withholding of the financial ledgers.

■ We find no error in the district court's use of the undisclosed work sheet. To be sure, a defendant is entitled to notice of factual information that will affect his sentence as well as an opportunity to respond, *see United States v. Hernandez,* 896 F.2d 642, 644 (1st Cir.1990), but Padin was afforded this right. While the work sheet itself was not disclosed prior to sentencing, Padin had ample notice of the underlying negative information reflected in the document.[1] Additionally, the parties were advised well ahead of sentencing that the district court would consider the Sentencing Guidelines in imposing sentence. As for acceptance of responsibility, it is a mitigating factor and it was up to Padin's counsel to raise the issue with the district court if Padin hoped to obtain credit on this score.

■ In addition to attacking his sentence as a whole, Padin challenges the restitution order on several grounds. The principal ground is that the district court, in taking Padin's guilty plea, neglected to first inform him that restitution could be imposed as part of his sentence. Fed.R.Crim.P. 11(c)(1) provides that in addition to much else, the court must tell the defendant prior to his plea of the maximum penalties, including "when applicable, that the court may also order the defendant to make restitution to any victim of the offense." The government concedes that this warning was not given.

This objection is raised for the first time on appeal. Padin's counsel asserts that he was caught off guard: restitution was not mentioned until the judge imposed sentence at the conclusion of the sentencing hearing, and final judgement was entered that same day. The error is not disputed, and is apparent on the face of the record without further findings. Rule 11 objections, so far as they affect the "knowing" character of the plea, are treated with extra solicitude. *United States v. Parra–Ibanez,* 936 F.2d 588, 593 (1st Cir.1991). Under all of the circumstances, we will consider the issue under the "plain error" doctrine.

1. The charge that Padin impeded justice by withholding accounting ledgers was set forth as a count in the indictment and reiterated in the pre-sentence report released to Padin in advance of sentencing. The pre-sentence report also contained the probation officer's assessment that Padin had abused a position of trust.

The government says that the error, even if plain, was not prejudicial because Padin must have known that restitution was an issue, given the attention devoted to the amount of the government's loss. Most of that attention occurred after the plea was taken. More important, the amount of the loss was clearly pertinent to the severity of the prison term, so there was good reason for this attention regardless of restitution. *Cf.* U.S.S.G. § 2B1.1(b)(1) (1992). If the government could show from the record that at the time of his plea Padin actually knew that restitution was a possibility, this would be a different case. It has not done so.

The more difficult problem stems from the warning given to Padin before his plea that $21,000 in fines might be imposed. A number of circuits have held that a warning of fines can render harmless the failure to warn of restitution, at least so long as any payments actually ordered do not exceed the figure stated to the defendant at the time of his plea. *E.g., United States v. Fox,* 941 F.2d 480 (7th Cir.1991), *cert. denied,* ___ U.S. ___, 112 S.Ct. 1190, 117 L.Ed.2d 431 (1992); *United States v. Miller,* 900 F.2d 919, 921 (6th Cir.1990). The Second Circuit has taken the opposite view, reasoning that a defendant might sometimes decide not to plead guilty if he knew that restitution, and not just a fine of comparable amount, was possible. *United States v. Khan,* 857 F.2d 85 (2d Cir.1988), *modified on reh'g,* 869 F.2d 661 (2d Cir. 1989), *cert. denied,* 498 U.S. 1028, 111 S.Ct. 682, 112 L.Ed.2d 674 (1991).

■ In our view, whether an omitted Rule 11 warning is prejudicial or harmless turns on the circumstances and we see no reason to lay down a general rule. In this case, no reason has been suggested to us why Padin's choice to plead would have been different if he had been told that $21,000 might be imposed as restitution, rather than as a fine. Indeed, usually restitution is the more attractive label from the defendant's standpoint, since it reduces the defendant's civil liability to the victim. In this case, we think the Rule 11 violation, although plain, was also harmless to the

extent of $21,000 and harmful beyond that amount. Since Padin had been told at the plea hearing that this was the maximum fine on all three counts, warning of a much larger amount could reasonably have affected his decision to plead. The government now says that Padin was actually subject to a fine of $250,000 on each count, but no one claims that he was so advised at the time he pled.

■ The question remains whether a remand is required. The government has made plain in its brief that it prefers to retain the guilty plea even at the cost of losing any restitution. This is an understandable choice, especially because the government may still have an independent civil claim against Padin for its losses. At the same time, the choice of sentence is normally a matter for the district court. In theory, had it known that the restitution ordered was unavailable, the district court could have chosen to impose a longer prison sentence—the maximum was 20 years—or even given Padin a corrected warning as to sanctions, allowing him at the same time to withdraw his guilty plea if he chose.

In this case, we think a remand would be a useless formality. The government has made it clear that annulling or reducing the restitution ordered is its preferred outcome if the court finds prejudicial error. We cannot imagine that the district court would increase the existing fifteen-year sentence, let alone reopen the guilty plea, simply because the amount of direct restitution is reduced and the government remitted to a civil suit. Padin himself has no basis for complaint since under the modified judgment he is obliged to pay no more than he was warned of at the time of his guilty plea.

Padin's brief contesting his sentence contains many separate arguments, some of which overlap while others are mooted by our resolution. We have addressed Padin's principal contentions and considered the others without finding further error. The judgment is *modified* by reducing the resti-

tution ordered to $21,000, and is otherwise *affirmed.*