# United States Court of Appeals
## For the First Circuit

No. 14-1530

UNITED STATES OF AMERICA,

Appellee,

v.

RICARDO URBINA-ROBLES,

Defendant-Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. Pérez-Giménez, U.S. District Judge]

Before

Howard, Chief Judge,
Thompson and Barron, Circuit Judges.

Kendys Pimentel Soto, with whom Kendys Pimentel Soto Law Office was on brief, for appellant.
Francisco A. Besosa-Martínez, Assistant United States Attorney, with whom Rosa Emilia Rodríguez-Vélez, United States Attorney, and Nelson Pérez-Sosa, Assistant United States Attorney, Chief, Appellate Division, were on brief, for appellant.

April 1, 2016

**BARRON**, **Circuit Judge**. Ricardo Urbina-Robles ("Urbina") pled guilty to carjacking, 18 U.S.C. § 2119, and carrying a firearm during and in relation to a crime of violence, 18 U.S.C. § 924(c). The District Court sentenced him to a total of 360 months in prison. Urbina appealed. Finding no error that warrants the reversal of Urbina's conviction or sentence, we affirm.

## I.

This case arises from a harrowing crime.[1] Early in the morning on February 4, 2013, Urbina and two accomplices broke into the victims' home in Puerto Nuevo, Puerto Rico. All three burglars wore masks and carried firearms. Once inside the home, the burglars tormented the victims, a father and son, both physically and mentally. They also stole several items, including a car. The robbers then drove away in the father's car, and the father called the police.

A grand jury indicted Urbina for carjacking, 18 U.S.C. § 2119, and carrying a firearm during and in relation to a crime of violence, 18 U.S.C. § 924(c). Urbina initially pled not guilty. On November 14, 2013, however, Urbina moved to change his plea. At a hearing on November 27, 2013, he pled guilty to both counts of the indictment. Urbina entered a "straight plea," meaning that

---

[1] We take the facts from the factual descriptions in Urbina's pre-sentence report, which Urbina did not object to and does not dispute. See United States v. Isom, 580 F.3d 43, 45 n.2 (1st Cir. 2009).

he pled guilty without entering into a plea agreement.  On April 2, 2014, the District Court sentenced Urbina to a total of 360 months of incarceration.

## II.

On appeal, Urbina first asks this Court to vacate his guilty plea to Count I of the indictment, which charges Urbina with committing carjacking in violation of 18 U.S.C. § 2119.  That statute prohibits the taking of a motor vehicle that has been shipped in interstate commerce "from the person or presence of another by force and violence or by intimidation," if done "with the intent to cause death or serious bodily harm."  Id. (emphasis added).

The indictment does not refer to the words "the person or presence."  Instead, the indictment simply charges Urbina with taking a motor vehicle "from N.D.R. [(the victim)], by force, violence, and intimidation" (emphasis added).  Urbina contends that charging a defendant with taking a car "from" someone is not the same, legally, as charging a defendant with taking a car "from the person or presence" of someone.  The former formulation of the crime, Urbina argues, does not require the same showing of the car's proximity to the person from whom it has been taken as does the latter formulation, which is the one that the carjacking statute uses.  See United States v. Savarese, 385 F.3d 15, 18-19 (1st Cir. 2004) (discussing the proximity required by the

carjacking statute).  He thus argues that the indictment omitted an element of the crime for which he was charged.

The Supreme Court has held, however, that defects in indictments are not jurisdictional and thus are subject to waiver. See United States v. Cotton, 535 U.S. 625, 630 (2002) ("[D]efects in an indictment do not deprive a court of its power to adjudicate a case."); see also United States v. Mojica-Baez, 229 F.3d 292, 311 (1st Cir. 2000) (stating that an indictment's omission of an element is subject to plain error review).  Accordingly, Urbina waived his right to bring this non-jurisdictional challenge when he pled guilty to the crime.  See United States v. Díaz-Doncel, 811 F.3d 517, 518 (1st Cir. 2016) (holding that, absent exceptions not applicable here, an unconditional guilty plea waives nonjurisdictional challenges to a conviction).

Nevertheless, Urbina does retain the right to challenge the validity of his plea.  See United States v. Castro-Vazquez, 802 F.3d 28, 32-33 (1st Cir. 2015).  And he challenges his plea on a number of grounds, including one that relies in part on the same contention about the indictment's misstatement of the "from the person of presence of" element.  We now turn to those challenges.

**III.**

To argue that his guilty plea should be vacated, Urbina points to what he contends were the District Court's violations of various Federal Rule of Criminal Procedure 11 requirements at his

plea colloquy. Urbina concedes that our review of the alleged violations is for plain error, because he did not raise them below. See United States v. Dominguez Benitez, 542 U.S. 74, 80 (2004). And so Urbina concedes that he must show as to each one "(1) an error, (2) that is clear or obvious, (3) which affects his substantial rights . . . and which (4) seriously impugns the fairness, integrity, or public reputation of the proceeding." United States v. Hernández-Maldonado, 793 F.3d 223, 226 (1st Cir. 2015) (quoting United States v. Correa-Osorio, 784 F.3d 11, 18 (1st Cir.2015)). Because we are dealing here with a conviction resulting from a guilty plea, to meet the third prong, Urbina must show that there is a reasonable probability that, but for the error, he might not have pled guilty. See United States v. Gandia-Maysonet, 227 F.3d 1, 4-5 (1st Cir. 2000).

But while Urbina argues that he satisfies this standard as to each Rule 11 violation, he does not in fact meet it as to any. We start with the one that is closely tied to the omission of the "person or presence" language of § 2119 from Count I of the indictment. We then consider the others.

**A.**

During Urbina's plea colloquy, the District Court told Urbina that he was charged with taking the vehicle "from the possession of [the victim] by force, violence, and intimidation." The District Court did not use the statutory language, "from the

- 5 -

person or presence" of the victim.  See 18 U.S.C. § 2119.  Urbina thus argues that his plea should be vacated because the District Court violated Rule 11(b)(1)(G), which required the District Court to "inform the defendant of, and determine that the defendant understands . . . the nature of each charge to which the defendant is pleading."

Our prior decisions in Gandia-Maysonet, 227 F.3d 1, and United States v. Delgado-Hernandez, 420 F.3d 16 (1st Cir. 2005), provide the framework for assessing this challenge.  As we explained in Gandia-Maysonet, "because a guilty plea is a shortcut around the fact-finding process, reviewing courts have been willing to intervene when an error in the guilty plea process arguably affects a 'core concern' of Rule 11."  227 F.3d at 3 (quoting United States v. Hernandez-Wilson, 186 F.3d 1, 5 (1st Cir. 1999)).  And one such core concern is "ensuring that the defendant understands the elements of the charges that the prosecution would have to prove at trial."  Id.; see also Delgado-Hernandez, 420 F.3d at 19 ("In order to be constitutionally valid, a guilty plea must be voluntary and intelligent." (citing Bousley v. United States, 523 U.S. 614, 618 (1998))).

The government's sole contention is that there was no clear or obvious error in the colloquy because the difference between "from the possession of" and "from the person or presence of" is not material.  But the government is wrong.  For while every

auto theft entails taking a car from the possession of the car's owner -- regardless of how proximate the car is to the victim when it is taken -- not every auto theft entails taking the car from "the person or presence" of the owner.  It is only those thefts that involve taking a car that is proximate to the victim in this specific way, however, that Congress saw fit to criminalize under the carjacking statute.  Cf. Savarese, 385 F.3d at 18-19.

In some cases, the indictment or the plea agreement may properly describe the same element that is misstated in the plea colloquy.  See Delgado-Hernandez, 420 F.3d at 26.  In such cases, the error thus might not undermine the Rule 11 requirement's "core concern": ensuring that "the defendant understands the elements of the charges that the prosecution would have to prove at trial." Gandia-Maysonet, 227 F.3d at 3.

But here, as we have noted, the indictment itself misstated the element that the car be taken "from the person or presence" of the victim.  In fact, the indictment did not even include the words "the possession of" that the government contends (wrongly) were an adequate substitute for the words Congress used to establish the element.  Instead, the indictment simply stated that Urbina was charged with taking the vehicle "from" the victim "by force, violence, and intimidation."  Nor was there a plea

- 7 -

agreement that might have provided Urbina with the requisite notice of the element in question.[2]

Notwithstanding the significance of the misstatement in the colloquy, Urbina still does need to show that there is a reasonable probability that he would not have pled guilty had the Rule 11 colloquy been conducted without this error. See Gandia-Maysonet, 227 F.3d at 4-5. But, in his initial briefing, as well as in the supplemental briefing this panel ordered on this very issue, Urbina merely asserts that he might not have so pled. On this record, that contention is not enough.

The discovery materials Urbina received prior to his guilty plea clearly suggested that, at trial, the government would have little trouble proving the "person or presence" element. Those materials included: photos which show that the house had a driveway and a garage, where the car could have been; a statement Urbina made to the police that "he acted alone, that he walked by the house[,] saw the car, and took it;" the report from a photo array, in which the victim identified Urbina "as one of the

---

[2] To be sure, the colloquy did reference the carjacking statute, as did the indictment. But those references do not suffice to cure the problem, given the misstatements in both the colloquy and the indictment itself of the element contained in that statute. Cf. Mojica-Baez, 229 F.3d at 309 ("[A] statutory citation standing alone in an indictment does not excuse the government's failure to set forth each of the elements of an offense."); Gandia-Maysonet, 227 F.3d at 4-5 (finding plain error when the indictment correctly stated the element at issue but the District Court misstated it during the plea colloquy).

assailants who did the home invasion/carjacking <u>at his residence</u>" and the affidavit attached to the search warrant, which alleged that two of the home-invaders "opened the front door of the . . . residence and began to load items" into the car. The discovery materials also included surveillance video of Urbina leaving the victim's subdivision in the victim's car on the night of the crime.

Moreover, there was overwhelming evidence that, if this was a carjacking, Urbina was the culprit. As proof of Urbina's involvement in the crime, the government had: an eyewitness identification of Urbina by the victim of the crime, the surveillance video mentioned above, and the fact that the victim's car keys and a bottle of champagne stolen from the victim were both found in Urbina's residence.

Given this record, Urbina's bare contention that there is a reasonable probability that he might have pled differently if the colloquy had properly described the element that the indictment misstated is not enough. And our conclusion that he has not made the requisite showing is reinforced by the lengthy sentence Urbina faced and the substantial benefit he received by pleading guilty. Thus, Urbina's unpreserved challenge to this Rule 11 violation -- clear though the violation is -- fails. <u>See</u> <u>Gandia-Maysonet</u>, 227 F.3d at 5; <u>see also</u> <u>Delgado-Hernandez</u>, 420 F.3d at 27.[3]

---

[3] Urbina also argues, for the first time on appeal, that the District Court's misunderstanding of the person or presence

**B.**

We now consider Urbina's other Rule 11 challenges. Each of them also fails, either because there was no error at all,[4] or because Urbina cannot show prejudice.

**1.**

The first of these challenges concerns Rule 11(b)(1)(H), which required the District Court to inform Urbina of "any maximum possible penalty, including . . . supervised release." The District Court correctly told Urbina that he was subject to a minimum prison sentence of seven years and a maximum prison

---

element caused the District Court to violate Rule 11(b)(3), which required the District Court to "determine that there is a factual basis for the plea." Urbina argues that, because of the misstatement of the crime, the District Court had no "factual basis" for the plea to Count I, because Urbina never admitted to violating the "person or presence" element. But this challenge, too, fails on prongs three and four of plain error review, in light of what we have described above about what the record shows regarding Urbina's involvement in the crime and the location of the car. See Delgado-Hernandez, 420 F.3d at 32. ("Because the record as a whole contains 'a rational basis in facts' to support [defendant]'s guilty plea, [defendant] fails to establish prejudice resulting from the court's inability to evaluate the factual basis proffered by the government during the proceedings below." (quoting Gandia-Maysonet, 227 F.3d at 6)(internal citation omitted)).

[4] Urbina alleges that the District Court violated Rule 11 by not examining him under oath and not advising him that the United States Sentencing Guidelines would provide what Urbina calls a "minimum term" because Urbina was a career offender. Neither was error. Rule 11(b)(1) did not require the District Court to place Urbina under oath. See Charles A. Wright and Andrew D. Leipold, 1A Federal Practice & Procedure § 177, at 218 (4th ed. 2008). Similarly, the District Court had no obligation to advise Urbina about particular provisions from the sentencing guidelines. See United States v. Jones, 778 F.3d 375, 383 (1st Cir. 2015).

sentence of life.  But, the District Court told Urbina only that he would be sentenced to a minimum of five years of supervised release, without stating what the maximum term of supervised release would be.  And even this statement was erroneous, as the minimum term of supervised release was actually three years; five years was the maximum.  See 18 U.S.C. § 3583(b)(1), (2); see also id. §§ 924(c)(1)(A)(ii), 2119, 3559(a).

Nonetheless, Urbina does not explain how the District Court's overstatement of the potential period of supervised release could have affected his plea decision, given that he knew he was facing a lengthy prison term.  Indeed, Urbina's straight plea yielded him a three-level reduction in his offense level under the sentencing guidelines.  Without that reduction, Urbina's guidelines sentencing range would have been 360 months to life, instead of 272 months to 319 months.  See USSG § 4B1.1(c)(2)-(3). Urbina offers no account -- nor is one apparent to us -- as to why he might have given up that significant benefit, and proceeded to trial, if the District Court did not commit this Rule 11 error. See Dominguez Benitez, 542 U.S. at 84-85.

**2.**

Urbina's next challenge concerns Rule 11(b)(1)(K), which required the District Court to advise Urbina of "the court's authority to order restitution," and Rule 11(b)(1)(L), which required the District Court to tell Urbina about "the court's

- 11 -

obligation to impose a special assessment."  The District Court did neither.  Nevertheless, once again, Urbina does not explain how the errors prejudiced him, and we do not see how, on this record, he could.  It is implausible that his knowledge that he might have to pay restitution and a $200 special assessment would have affected his plea decision concerning a crime for which, as the District Court told him, he faced a maximum sentence of life in prison and a minimum sentence of seven years in prison, and for which the guidelines sentence was significantly reduced because of his plea.[5]

### 3.

Finally, Urbina points to the District Court's violation of Rule 11(b)(1)(M), which required the District Court to advise Urbina that, in determining his sentence, it would be obliged to "calculate the applicable sentencing-guideline range, and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C.

---

[5] Urbina, citing United States v. Padin-Torres, 988 F.2d 280, 284 (1st Cir. 1993), and United States v. Harrington, 354 F.3d 178 (2d Cir. 2004), argues categorically that "when a defendant is not advised as to a potential fine or restitution, a restitution order cannot stand at sentencing."  But Harrington was not a plain-error case -- the defendant in Harrington had moved to withdraw his plea in the district court.  See 354 F.3d at 181-83.  And although Padin-Torres did find a District Court's failure to inform a defendant about the possibility that the District Court would impose restitution and fines harmful, Padin-Torres expressly declined "to lay down a general rule," 988 F.2d at 284, and Urbina makes no argument as to why this error was harmful in this case.

§ 3553(a)." Despite this requirement, the District Court failed even to mention the sentencing guidelines or to say anything about how Urbina's sentence would be determined.

Once again, though, Urbina cannot show prejudice. The District Court's failure to mention the sentencing guidelines was not comparable to the significant misstatements of possible consequences that were present in the cases on which Urbina relies. See United States v. Rivera-Maldonado, 560 F.3d 16, 19-21 (1st Cir. 2009); United States v. Santo, 225 F.3d 92, 99-100 (1st Cir. 2000). In Santo, the District Court misinformed the defendant of the possible statutory minimum and maximum prison terms he faced. 225 F.3d at 99-100. In Rivera-Maldonado, the District Court told the defendant that he faced a three-year maximum term of supervised release, when in fact he faced a maximum life term. 560 F.3d at 19-21. Urbina develops no argument as to how the District Court's error "dramatically altered the sentencing stakes for" him, given how substantial even the minimum sentence he faced was. Id. at 21. Nor does he give any account as to why, but for the District Court's error, he might have given up the substantial benefit that he received by pleading guilty. Thus, as concerning as this error is, we do not think it suffices to vacate Urbina's plea on plain error review.

## C.

None of this is to minimize the District Court's multiple failures to follow the requirements of Rule 11.  The Rule's requirements are mandatory, and the District Court's multiple divergences from those requirements are concerning.  But Urbina, who did not object to any of the Rule 11 errors in the district court, has not met his burden on plain error review.  And that is no less true even if we consider -- as Urbina says we should -- all of the Rule 11 violations together, given the substantial evidence of Urbina's guilt, the lengthy prison sentence that he faced, and the benefit that he received because of his plea.

## IV.

Finally, Urbina challenges his sentence.  He contends that the District Court committed procedural errors in imposing the sentence, and he argues that the sentence also is substantively unreasonable.  We address each challenge in turn.

## A.

Urbina contends that the District Court committed procedural error in applying three enhancements when calculating Urbina's base offense level under the United States Sentencing Guidelines.  See United States v. Prange, 771 F.3d 17, 33 (1st Cir. 2014).  Specifically, Urbina contends that (1) no "serious bodily injury" resulted from the carjacking offense, see USSG § 2B3.1(b)(3)(B); (2) no actual "loss" of more than $50,000

resulted from the carjacking offense, see USSG § 2B3.1(b)(7)(C)(2013); and (3) there was no evidence that Urbina "knew or should have known that a victim of the offense was a vulnerable victim," see USSG § 3A1.1(b). Urbina did not raise any of these arguments below, and so we review each for plain error. See United States v. Figuereo, 404 F.3d 537, 540 (1st Cir. 2005). None has merit.

## 1.

Urbina first challenges the District Court's finding that one or more of the victims sustained "serious bodily injury" under USSG § 2B3.1(b)(3)(B). This finding resulted in a four-level increase to Urbina's offense level. The guidelines define "serious bodily injury" as "injury involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation." USSG § 1B1.1, cmt. 1(L).

The record indicates that Urbina and his accomplices abused the father and son physically and emotionally for over one hour. Urbina and his accomplices dragged the son around the victims' house while repeatedly hitting him on the head with a handgun. They also hit the father on the head multiple times with their firearms, held a knife to the son's neck while threatening to kill him, tied the father and son up in the bathroom, and

threatened to get pliers to pull out the son's fingernails. As a result of that conduct, the father had a lesion on his head, and he and his son had multiple bruises on their faces and heads.

Both the father and son also have continued to receive psychological and psychiatric treatment since the night of the crime. The father has been diagnosed with depression, anxiety, panic attacks, and insomnia as a result of the trauma. Immediately after the crime, he could sleep only an hour per night. Despite psychiatric medication and treatment, a year after the incident he was still unable to sleep more than four to five hours each night. The father, who is a surgeon, also has been unable to perform surgeries as a result of the mental impact of the crime. In addition, the father told the District Court at sentencing that his son "doesn't want to go back to a patio, doesn't want to ride a bike, because [Urbina] and [his] gang might show up."

On these facts, the District Court did not make a clear or obvious error in applying the "serious bodily injury" enhancement. The Fifth Circuit, in United States v. Reed, 26 F.3d 523 (5th Cir. 1994), a case Urbina cites, held that a victim's "post-traumatic stress syndrome" from a robbery did constitute "serious bodily injury" under the sentencing guidelines.[6] Id. at

_____

[6] Two other cases Urbina cites, United States v. Lanzi, 933 F.2d 824 (10th Cir. 1991), and United States v. Sawyer, 115 F.3d 857 (11th Cir. 1997), are inapposite here.

- 16 -

530-31.  And we have held that "serious and continuing mental trauma," at least where it follows a serious physical assault, can constitute a "protracted . . . impairment" of "mental faculty" for purposes of the nearly identical definition of "serious bodily injury" contained in 18 U.S.C. § 1365(g)(3).  See United States v. Lowe, 145 F.3d 45, 53 (1st Cir. 1998).  Given this precedent, we cannot say on this record that the District Court "clear[ly] and obvious[ly]" erred in applying the serious bodily injury enhancement in the absence of any objection from Urbina. Hernández-Maldonado, 793 F.3d at 226 (quoting Correa-Osorio, 784 F.3d at 18).

**2.**

Urbina next asserts that the District Court erred when it applied a two-level increase to the carjacking offense under USSG § 2B3.1(b)(7)(C)(2013), after finding that the offense involved a "loss" of over $50,000.  Urbina contends that the presentence report states that the loss from the offense was only $40,000, and that the District Court overestimated the amount lost.

Urbina is wrong.  The presentence report -- which Urbina does not contest -- does state that Urbina took $40,000 in cash from the victim's safe.  But the presentence report reveals that Urbina and his accomplices also took "other valuables such as Ipads [sic], video games, bottles of wine, jewelry, [and the victim's] car, among other things."  Moreover, the presentence report states

that the victim filed an insurance claim for $80,000 as a result of the crime.  Thus, the District Court did not err in finding that the crime caused a loss of more than $50,000, and applying the two-level enhancement for that reason.

**3.**

Third, and finally, Urbina argues that the District Court was wrong to apply a two-level enhancement because Urbina "knew or should have known that a victim of the offense was a vulnerable victim."  USSG § 3A1.1(b)(1).  A "vulnerable victim" is one "who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct."  Id. cmt. 2.

Urbina does not dispute that the son -- who was a minor -- qualifies as a "vulnerable victim" under the guideline.  See United States v. Walker, 665 F.3d 212, 233 (1st Cir. 2011) ("Minors are often regarded as especially vulnerable victims.").  Urbina argues instead that the son just "happened to be a minor," and that Urbina "had no prior knowledge, or reason to know, the age of any of [the] victims."

Implicit in the District Court's ruling, however, was a finding that Urbina knew or should have known that the son was a minor and thus a vulnerable victim.  See United States v. Melendez, 279 F.3d 16, 18-19 (1st Cir. 2002) (explaining that district courts may make implicit findings in imposing sentences).  And the

- 18 -

District Court did not plainly err in so finding.  The son was only twelve years old at the time of the crime, and the details of the crime were such that it would be reasonable to conclude that Urbina would have been aware of the son's youth.[7]

**B.**

Finally, Urbina argues briefly that his 360-month sentence is substantively unreasonable.  Our review is for abuse of discretion.  United States v. Trinidad-Acosta, 773 F.3d 298, 308 (1st Cir. 2014).

Urbina's sentence exceeded the top of the guidelines range by forty-one months.  Urbina points out that the range in this case had already been enhanced as a result of Urbina's criminal history and the characteristics of the offense.  Urbina contends that a sentence as long as his was therefore unjustifiable.  It was not.

---

[7] At oral argument and in supplemental briefing, Urbina contended that the District Court had erred by failing to inquire into the elements of burglary under Puerto Rico law before applying § 4B1.1 of the sentencing guidelines.  Urbina argues that this challenge is not waived because it relies on changes in law -- the Supreme Court's decision in Johnson v. United States, 135 S. Ct. 2551 (2015), and our decision in United States v. Castro-Vazquez, 802 F.3d 28 (1st Cir. 2015) -- that occurred after the initial briefing of this appeal was completed.  That is not so.  His contention relies squarely on the Supreme Court's decision in Descamps v. United States, 133 S. Ct. 2276 (2013), which was decided long before Urbina filed his opening brief.  This challenge is therefore waived.  See HSBC Realty Credit Corp. (USA) v. O'Neill, 745 F.3d 564, 577 (1st Cir. 2014).

"The linchpin of a reasonable sentence is a plausible sentencing rationale and a defensible result." Id. (quoting United States v. Ramos, 763 F.3d 45, 58 (1st Cir. 2014)). The record demonstrates that the District Court considered Urbina's long criminal history, which included a series of armed burglaries and carjackings similar to this one. The District Court also found Urbina's conduct in this case to have been what it was: "unusually heinous . . . cruel, [and] brutal," including "torture of the victims, gratuitous infliction of injury, and prolonged pain, suffering, and humiliation of the victims." We therefore reject Urbina's substantive reasonableness challenge.

## V.

For the foregoing reasons, we **affirm** Urbina's conviction and sentence.