# United States Court of Appeals
## For the First Circuit

No. 18-1767

UNITED STATES OF AMERICA,

Appellee,

v.

MICHAEL ROMAN BURGHARDT,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Joseph N. Laplante, U.S. District Judge]

Before

Thompson, Kayatta, and Barron,
Circuit Judges.

Christine DeMaso, Assistant Federal Public Defender, for appellant.
Seth R. Aframe, Assistant United States Attorney, with whom Scott W. Murray, United States Attorney, was on brief, for appellee.

October 3, 2019

**KAYATTA**, **Circuit Judge**.  Michael Roman Burghardt pled guilty to one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1).  He was sentenced to fifteen years' imprisonment, the mandatory minimum under the Armed Career Criminal Act (ACCA).  On appeal, Burghardt claims plain error because the government did not charge him with, and he did not plead guilty to, knowing the facts that made him a person prohibited from possessing a firearm.  In the alternative, he argues that he was ineligible for sentencing under the ACCA and that the district court miscalculated his base offense level under the Sentencing Guidelines.

For the following reasons, we affirm Burghardt's conviction and sentence.  In so doing we explain how plain error review works when a defendant claims that he would not have pled guilty had he been informed at his acceptance-of-plea proceeding that the government need prove that he knew that his prior offense had been punishable by more than a year in prison.  We also hold that a conviction for selling a controlled substance under New Hampshire law, N.H. Rev. Stat. § 318-B:2(I), is a "serious drug offense" under the ACCA, 18 U.S.C. § 924(e)(2)(A)(ii).

**I.**

In 2010, Burghardt was convicted under state law of three counts of selling a controlled drug (less than a gram of heroin on two dates and more than five grams of heroin on a third) and one

count of possessing a controlled drug with the intent to sell (more than five grams of heroin).[1]  See N.H. Rev. Stat. § 318-B:2(I). In 2011, Burghardt was also convicted of robbery under New Hampshire law.[2]  See id. § 636:1.

In 2017, Burghardt ran afoul of the law again.  During a search of Burghardt incident to arrest, officers found an unloaded pistol under his coat.  Because of his felony record, Burghardt was charged with violating the federal felon-in-possession statute.  The indictment stated that Burghardt, "having been convicted of a crime punishable by imprisonment for a term exceeding one year, did knowingly possess in and affecting interstate commerce" a .380 caliber pistol, in violation of 18 U.S.C. § 922(g)(1).  The indictment did not assert that Burghardt knew that he had been convicted of a crime punishable by imprisonment for a term exceeding one year (the "scienter-of-status element").

Burghardt initially pled not guilty, but eventually changed his plea to guilty.  Before accepting that guilty plea, the district court informed Burghardt that a conviction for

---

[1] The maximum term of imprisonment for selling less than one gram of heroin is seven years.  See N.H. Rev. Stat. § 318-B:26(I)(c)(4).  For possession with intent to sell or for selling more than five grams of heroin, the maximum term of imprisonment is thirty years.  See id. § 318-B:26(I)(a)(3).

[2] New Hampshire robbery is a class B felony, carrying a maximum term of imprisonment of seven years.  See N.H. Rev. Stat. § 636:1(III); id. § 651:2(II)(b).

violating § 922(g) required the government to prove four elements: (1) that Burghardt possessed a firearm; (2) that the possession was knowing and intentional; (3) that the firearm (or some part of it) had been transported at some point in interstate commerce; and (4) that Burghardt's possession of the firearm took place after he had been convicted of a crime punishable by a term of imprisonment exceeding one year.  With the acquiescence of all counsel, and without the benefit of the Supreme Court's recent decision in Rehaif v. United States, 139 S. Ct. 2191 (2019), the district court did not inform Burghardt that the government would additionally have to prove the scienter-of-status element in order to sustain a conviction.  Burghardt pled guilty to the single count of violating § 922(g).

The United States Probation Office recommended that the district court sentence Burghardt under the ACCA.  Under the ACCA, "a person who violates [the felon-in-possession statute] and has three previous convictions . . . for a violent felony or a serious drug offense . . . shall be . . . imprisoned not less than fifteen years."  18 U.S.C. § 924(e)(1).  The district court, over Burghardt's objections, concluded that Burghardt's convictions under New Hampshire law for selling a controlled substance were "serious drug offenses" as defined by the ACCA.  The district court also acknowledged Burghardt's challenge to the Probation Office's base-offense-level calculation but noted that it "need not reach

- 4 -

this question" in light of the ACCA determination. The district court sentenced Burghardt to fifteen years' imprisonment, the ACCA's mandatory minimum.

On appeal, Burghardt raised in his opening brief three challenges to his sentence: (1) selling a controlled substance under New Hampshire law is not a "serious drug offense" and therefore cannot be a predicate act for purposes of triggering the ACCA's mandatory minimum sentence; (2) robbery under New Hampshire law is not a "crime of violence" under the Guidelines and therefore should not have increased his base offense level; and (3) imposing the ACCA's mandatory minimum sentence violated his Sixth Amendment rights because his prior convictions were not charged in the indictment or proven beyond a reasonable doubt. We do not address Burghardt's Sixth Amendment argument, as he acknowledges that it is foreclosed by binding precedent, see Almendarez-Torres v. United States, 523 U.S. 224, 226-27 (1998), and he correctly concedes that he raises the issue solely "to preserve it for possible Supreme Court review."

A fourth challenge then arose when the Supreme Court decided Rehaif after the government and Burghardt filed their reply briefs. In Rehaif, the Supreme Court held that under § 922(g) the government "must show that the defendant knew he possessed a firearm and also that he knew he had the relevant status [as a prohibited person] when he possessed it." 139 S. Ct. at 2194. We

granted the parties leave to file supplemental briefing addressing Rehaif's impact. In his supplemental brief, Burghardt urges that Rehaif requires us to vacate his plea and conviction and either dismiss the indictment against him or, alternatively, remand for further proceedings.

## II.

We turn now to the merits of the four challenges Burghardt raises on this appeal, beginning first with his challenge based on Rehaif.

### A.

Burghardt contends that the holding in Rehaif exposes a common defect in both the indictment against him and in the acceptance of his plea. We address each in turn.

#### 1.

A guilty plea waives all non-jurisdictional challenges to an indictment. United States v. Urbina-Robles, 817 F.3d 838, 842 (1st Cir. 2016). And "defects in an indictment do not deprive a court of its power to adjudicate a case." United States v. Cotton, 535 U.S. 625, 630 (2002). Burghardt nevertheless argues that he could not have waived his challenge to the indictment because "waiver is the intentional relinquishment or abandonment of a known right," United States v. Olano, 507 U.S. 725, 733 (1993) (internal quotation marks and citation omitted), and the Supreme Court did not recognize the scienter-of-status element until after

- 6 -

his sentencing.[3]  But we have not limited waiver doctrine in that way.  Indeed, we have characterized as "waived arguments" even those that "become available only as a result of intervening changes in law."  United States v. Sevilla-Oyola, 770 F.3d 1, 14 (1st Cir. 2014).  Of course even waived arguments may be reviewed in the event that we choose to "engage[] in the rare exercise of [our] power to excuse waiver."  Igartúa v. United States, 626 F.3d 592, 603 (1st Cir. 2010).  But because we do not see -- nor does Burghardt provide -- any compelling reason for so exercising our discretion in this case, we will not entertain Burghardt's challenge to the indictment.

---

[3] The government correctly agrees that the law in this circuit did not previously impose this scienter-of-status element for convictions under § 922(g).  In United States v. Smith, we held that "[u]nder established case law, the government need not prove that the defendant knowingly violated [§ 922(g)]; rather, it only need prove, which it did here, that the defendant knowingly possessed firearms."  940 F.2d 710, 713 (1st Cir. 1991).  More recently, however, we stated in dicta that "Smith's holding actually held it was unnecessary for the government to prove the defendant's knowledge of the law itself" and that "[t]he principal's knowledge of his felony status was not at issue." United States v. Ford, 821 F.3d 63, 71 n.4 (1st Cir. 2016).  Nonetheless, we recognize that since Smith we have omitted a scienter-of-status element from our recitation of the elements needed to sustain a § 922(g) conviction.  See, e.g., United States v. Scott, 564 F.3d 34, 39 (1st Cir. 2009) ("A felon-in-possession conviction requires proof that the defendant had a prior felony conviction for an offense punishable by imprisonment for a term exceeding one year and had knowing possession of a firearm in or affecting interstate commerce.").  Rehaif clearly imposes upon the government that additional requirement.

- 7 -

**2.**

A guilty plea does not waive all challenges to the plea itself. See, e.g., United States v. Ortiz-Torres, 449 F.3d 61, 68 (1st Cir. 2006) (noting that "a guilty plea does not preclude an attack on the plea's voluntariness" (internal quotation marks omitted)). One of the "core concern[s]" of a plea colloquy pursuant to Federal Rule of Criminal Procedure 11 is "ensuring that the defendant understands the elements of the charges that the prosecution would have to prove at trial." United States v. Gandia-Maysonet, 227 F.3d 1, 3 (1st Cir. 2000); Fed. R. Cr. P. 11(b)(1)(G) ("[T]he court must inform the defendant of, and determine that the defendant understands, . . . the nature of each charge to which the defendant is pleading."). Burghardt protests the district court's undisputed (but understandable) failure during the plea colloquy to inform him of the scienter-of-status element. Because Burghardt did not offer to the district court the Rule 11 objection he now raises on appeal, we review his argument for plain error. See United States v. Dominguez Benitez, 542 U.S. 74, 80 (2004); United States v. Hernàndez-Maldanado, 793 F.3d 223, 226 (1st Cir. 2015). Under this standard, a defendant must show "(1) an error, (2) that is clear or obvious, (3) which affects his substantial rights . . . , and which (4) seriously impugns the fairness, integrity or public reputation of the proceeding." United States v. Correa-Osorio, 784 F.3d 11, 17–18

(1st Cir. 2015). The parties agree that the first two prongs of this analysis have been met, in light of Rehaif. For that reason, we turn to the prejudice prong by considering whether the error affected his substantial rights.

Showing prejudice requires demonstrating "a reasonable probability that, but for [the error claimed], the result of the proceeding would have been different." United States v. Turbides-Leonardo, 468 F.3d 34, 39 (1st Cir. 2006) (alteration in original) (quoting United States v. Padilla, 415 F.3d 211, 221 (1st Cir. 2005)). In the context of an appeal challenging an unpreserved error in accepting a guilty plea, the "result of the proceeding" is the entry of the plea. Therefore, a defendant who brings such a challenge must "show a reasonable probability that, but for the purported error, he would not have pled guilty." United States v. Díaz-Concepción, 860 F.3d 32, 38 (1st Cir. 2017); Urbina-Robles, 817 F.3d at 842. The error in this case is the failure of the district court to inform Burghardt of the scienter-of-status element of the § 922(g) charge. See Fed. R. Crim. P. 11(b)(1)(G). Burghardt argues that, had he been informed about this additional burden imposed on the government, there is a reasonable probability he would have gone to trial.

Burghardt's mere assertion, by itself, that he would likely have acted differently but for the Rule 11 error is insufficient to establish the requisite reasonable probability of

a different result if the circumstances surrounding the plea render such a change in his behavior improbable. See Díaz-Concepción, 860 F.3d at 38 ("Where . . . it is clear from the uncontested record that the government would have had sufficient evidence to secure a conviction at trial, an appellant's bare contention that he might have pled differently if the elements of the charged offense had been expounded upon is not enough to meet that standard."); Urbina-Robles, 817 F.3d at 844 (holding that a defendant's "mere[] assert[ion] that he might not have so pled" but for a Rule 11 error was not enough to satisfy the prejudice prong when "[t]he discovery materials [the defendant] received prior to his guilty plea clearly suggested that, at trial, the government would have little trouble proving the [misstated] element"). So, "informed by the entire record," Dominguez Benitez, 542 U.S. at 83, we "can fairly ask [Burghardt] what he might ever have thought he could gain by going to trial," keeping in mind that if the record makes it reasonably probable that he would have done so, "it is no matter that the choice may have been foolish," id. at 85.

Burghardt can point to nothing in the record suggesting that he would have insisted on going to trial, even if foolishly, if he had been told of the scienter-of-status element. He does advance the reasonable premise that his probability of opting for trial would have increased commensurate with a perception that the

government would have had any difficulty in proving the added element. Of course, Burghardt carefully tenders no claim that he would have testified that he did not know that his prior offenses were punishable by more than a year in prison. But a defendant can instead base a decision to risk a trial on his perception of the government's ability to carry its burden even as he remains mute.

Our own review of the record nevertheless reveals no reason to think that the government would have had any difficulty at all in offering overwhelming proof that Burghardt knew that he had previously been convicted of offenses punishable by more than a year in prison. Burghardt does not dispute that he has pled guilty to offenses punishable by a term of imprisonment well beyond a year. Nor does he dispute that New Hampshire law requires a judge to make sure that a defendant knows the maximum possible sentence when entering a guilty plea. See State v. Percy, No. 2013-0648, 2014 WL 11485808, at *3 (N.H. Oct. 21, 2014) (holding that a trial court must ascertain that a defendant understands the "potential penalties"); see also State v. Allard, 356 A.2d 671, 672 (N.H. 1976); State v. Farris, 320 A.2d 642, 644 (N.H. 1974) (noting the requirement that "the defendant fully underst[and] the consequences of his plea in terms of the maximum sentence which might be imposed"). So it seems virtually certain that at least one of the two state court judges who accepted

Burghardt's guilty pleas in his state court cases -- in 2010 for the drug convictions and in 2011 for the robbery conviction -- told Burghardt face-to-face what his maximum sentence could be, an inference bolstered by his lack of appeal of those pleas at the time for failure to comply with New Hampshire law. And we have repeatedly held that if there is overwhelming proof establishing an element of the charged offense, a court's failure to describe that element during a Rule 11 plea colloquy does not by itself constitute plain error. See United States v. Gandia-Maysonet, 227 F.3d 1, 5 (1st Cir. 2000); see also Díaz-Concepción, 860 F.3d at 38; Urbina-Robles, 817 F.3d at 844.

We also consider the fact that, according to his presentence investigation report (PSR), Burghardt received 2-10 years in state prison for two of the sale convictions, 7.5-15 years in state prison for the third sale conviction and the possession-with-intent-to-sell conviction, and 2-5 years in state prison for the robbery conviction.[4] If true, the receipt of such sentences

---

[4] The PSR suggests that Burghardt was paroled after serving two years of his sentences for his convictions on the four drug charges -- which could have impacted his knowledge as to the length of time he was serving for any single conviction -- and does not clearly state the length of time he served solely for the robbery charge beyond 163 days. But evidence that he served over a year for a single charge is not necessary to support our conclusion, because, as discussed, the government has ample other evidence that it could have introduced to show Burghardt's knowledge of his status. For example, along with these sentences, the defendant received other sentences for potentially over one year that were together sufficient to place him into criminal history

would certainly have made clear to Burghardt the fact that his offenses were punishable by more than a year in prison. Burghardt correctly states that he had no reason to contest these descriptions of his actual sentences in the PSR in the district court because they related to an element that our circuit had not recognized as an element required to sustain a conviction under § 922(g). But for that same reason those descriptions are unlikely to have been fabricated, because Burghardt's actual imposed sentences would not have affected his conviction or sentence prior to Rehaif, eliminating any possible incentive for the government to exaggerate their length. At a minimum, this raises yet another strong inference that any state records would likely doom any remaining chance of claiming insufficient scienter.

In theory, it is nevertheless possible that the state-court records regarding Burghardt's two prior convictions might reveal no mention of the possible prison terms in either case, or that perhaps the state records may be unobtainable or uninformative, in which case Burghardt might arguably have thought that a prosecutor in this case relying only on an instruction concerning normal state-court practice might fall short of securing his conviction, even in the absence of any testimony

---

category VI, negating the inference that he has never been informed that he faced a sentence that would qualify under § 922(g).

- 13 -

challenging conformity with that practice in Burghardt's prior cases. That seems to be quite a stretch. In any event, though, neither side has chosen to present us with the state records from either state court proceeding or to make any representation as to their unavailability. We are therefore presented with an "unknown variable: the contents of the record of the prior conviction[s]." Turbides-Leonardo, 468 F.3d at 40. In light of this pivotal gap, we must ask: Whose problem is that?

Our case law dealing with an analogous gap in the record relevant to plain error review of sentencing challenges suggests strongly that the absence of more records concerning Burghardt's state court proceedings cuts against him in this case. In a series of cases, we confronted the claim that Shepard documents from a state court might show that there was a "reasonable probability that [the defendant] would be better off from a sentencing standpoint had the district court not committed the claimed . . . error." United States v. Bauzó-Santiago, 867 F.3d 13, 27 (1st Cir. 2017) (second alteration in original). In those cases, we held that the defendant -- bearing the burden of showing that such a reasonable probability existed -- need produce the records or at least identify a reason why the records would have established the premise warranting a different sentence. See id. at 27-28; United States v. Serrano-Mercado, 784 F.3d 838, 848 (1st Cir. 2015); Turbides-Leonardo, 468 F.3d at 40. Here, by analogy, we are

- 14 -

reviewing the district court's Rule 11 failure under plain error review, where the defendant also bears the burden of showing that a reasonable probability of a different outcome exists.

We also note that, though Burghardt did not have a plea agreement in this case, he did receive a benefit by pleading guilty in the form of a three-level reduction under the Guidelines for his acceptance of responsibility.[5]  The benefit received by the defendant from pleading is often a factor in our analysis of the likelihood that a defendant might have decided not to plead guilty, further buttressing our conclusion that Burghardt has failed to show a reasonable probability that, but for the Rule 11 error, he would have gone to trial.  See, e.g., Díaz-Concepción, 860 F.3d at 39; Urbina-Robles, 817 F.3d at 844; cf. United States v. Caraballo-Rodríguez, 480 F.3d 62, 76 (1st Cir. 2007).

Based on the foregoing, Burghardt has failed to carry his burden of demonstrating that it is reasonably probable that he would not have pled guilty had the district court told him that the government was required to prove beyond a reasonable doubt that he knew when he possessed the gun that he had previously been

---

[5] Although Burghardt was sentenced to the ACCA's mandatory minimum, he argued at sentencing that the ACCA was inapplicable and that he should be sentenced under the Guidelines range instead. Therefore, the fact that he did not ultimately realize the three-level reduction benefit is of no matter -- Burghardt certainly envisioned and advocated for a scenario where he would have benefited from that reduction.

convicted of an offense punishable by more than a year in prison. His challenge to the acceptance of his plea therefore fails on plain error review.

**B.**

We turn next to Burghardt's sentencing challenges, beginning with his argument that selling a controlled substance under New Hampshire law, N.H. Rev. Stat. § 318-B:2(I), is not a "serious drug offense" and therefore cannot be a predicate act for purposes of triggering the ACCA's mandatory minimum sentence. The New Hampshire statute states that "[i]t shall be unlawful for any person to manufacture, possess, have under his control, sell, purchase, prescribe, administer, or transport or possess with intent to sell, dispense, or compound any controlled drug." Id. We review de novo the legal question of whether a prior conviction qualifies as an ACCA predicate. United States v. Whindleton, 797 F.3d 105, 108 (1st Cir. 2015).

Under the ACCA, "a person who violates [the felon-in-possession statute] and has three previous convictions . . . for a violent felony or a serious drug offense . . . shall be . . . imprisoned not less than fifteen years." 18 U.S.C. § 924(e)(1). The ACCA includes in its definition of a "serious drug offense" "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance [as defined under federal law],

- 16 -

for which a maximum term of imprisonment of ten years or more is prescribed by law." Id. § 924(e)(2)(A)(ii). The parties agree that determining whether a given state crime falls within § 924 requires employing a "categorical approach," under which "a state crime cannot qualify as an ACCA predicate if its elements are broader than those of a listed generic offense." Mathis v. United States, 136 S. Ct. 2243, 2251 (2016). Under this approach, a court must consider "only the offense's legal definition." Whindleton, 797 F.3d at 108. "How a given defendant actually perpetrated the crime . . . makes no difference." Mathis, 136 S.Ct. at 2251.

Additionally, however, a statute can be "indivisible" if it sets out a single set of elements so as to define a single crime and "divisible" if it lists elements in the alternative, thus defining multiple crimes. These two types of statutes require a slightly different analysis under the categorical approach. Id. at 2249-50. For an indivisible crime, a court simply "lines up that crime's elements alongside those of the generic offense and sees if they match," but for a divisible crime, a court must use a "modified categorical approach" where it " looks to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of" and then compares only this specific committed offense with the relevant generic offense. Id. at 2248-49. Here, the parties agree that

New Hampshire section 318-B:2(I) is divisible.  For example, a person may violate the statute if he "manufacture[s]" a controlled substance or if he instead "purchase[s]" a controlled substance. Proving either of the alternative elements is sufficient for a conviction under section 318-B:2(I).  It is undisputed that Burghardt was convicted of "sell[ing]" a controlled drug, and as such, this is the specific offense that we must compare to the generic offense.  See N.H. Rev. Stat. § 318-B:2(I).

Under New Hampshire law, "sale" is defined as "barter, exchange or gift, or offer thereof."  Id. § 318-B:1(XXX).  The parties agree that this statutory definition is not further divisible, and that it identifies four alternative means as opposed to four alternative elements.  This distinction is significant. See Mathis, 136 S.Ct. at 2256 (explaining that when reviewing statutes listing alternative means, "the court has no call to decide which of the statutory alternatives was at issue in the earlier prosecution," and "may ask only whether the elements of the state crime and generic offense make the requisite match"). Accordingly, because Burghardt was convicted of selling a controlled substance, we must ask whether any of the alternative means of committing a sale under New Hampshire law are broader than the ACCA definition of a "serious drug offense."  See id. at 2251.  If so, section 318-B:2(I) is categorically not a "serious drug offense."

Burghardt rests his hat on the "offer" means of committing a sale. See N.H. Rev. Stat. § 318-B:1(XXX). But we have already held that a "bona fide" offer -- one "requiring the intent and the ability to proceed with a sale -- sufficiently 'involv[es]' the distribution of drugs to qualify as a 'serious drug offense' under the ACCA." Whindleton, 797 F.3d at 111. So Burghardt takes a more refined approach. He argues that New Hampshire law criminalizes more than just "bona fide" offers. Rather, it goes so far as to also criminalize "mere" offers to sell a controlled substance -- meaning those in which the offeror does not have the intent or the ability to proceed with the sale. And a "mere" offer, Burghardt contends, is not an offense "involving manufacturing, distributing, or possessing with intent to manufacture or distribute a controlled substance" under the ACCA. 18 U.S.C. § 924(e)(2)(A)(ii).

For Burghardt to be successful in his more refined argument, we would have to answer two questions in his favor. First, does New Hampshire law in fact criminalize "mere" offers? And second, is a "mere" offer a "serious drug offense"? Because we find that Burghardt's argument fails at the first question, we need not address the second.

New Hampshire law does not explicitly limit sale-by-offer violations of section 318-B:2(I) to "bona fide" offers. Indeed, it simply uses the word "offer," without more. See N.H.

Rev. Stat. § 318-B:1(XXX). The parties dispute the breadth of this word, each claiming that it clearly does or does not encompass "mere" offers. Based on the text alone, we have trouble accepting either party's interpretation to the exclusion of the other's. Certainly it is not unreasonable to read the word "offer" as including fraudulent or insincere offers. See, e.g., United States v. Savage, 542 F.3d 959, 965 (2d Cir. 2008) (holding that a statute defining "sale" as an "offer" "plainly criminalizes, inter alia, a mere offer to sell a controlled substance. . . . An offer to sell can be fraudulent, such as when one offers to sell the Brooklyn Bridge." (citation omitted)). But it is also reasonable to eschew such arguably overly literal readings of the word. See, e.g., People v. Mike, 706 N.E.2d 1189, 1191 (N.Y. 1998) (holding that, under a statute which defined "sell" as an "offer," "there must be evidence of a bona fide offer to sell -- i.e., that defendant had both the intent and the ability to proceed with the sale"). So the text of section 318-B:2(I) is ambiguous.

In light of this ambiguity, we heed the "fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." Nat'l Ass'n of Home Builders v. Defs. of Wildlife, 551 U.S. 644, 666 (2007); see also MacPherson v. Weiner, 959 A.2d 206, 209 (N.H. 2008) ("We . . . review a particular provision, not in isolation, but together with all

associated sections."). Here, section 318-B:2(I)'s context informs our reading of the term "offer." In the very next paragraph, New Hampshire makes it unlawful for a person to "sell . . . (1) any substance which he represents to be a controlled drug or controlled drug analog, or (2) any preparation containing a substance which he represents to be a controlled drug or controlled drug analog." N.H. Rev. Stat. § 318-B:2(I-a). As we explained above, "sell" in this context includes "offer." So, subsection I-a criminalizes one significant type of offers that are not bona fide offers to sell a controlled drug -- offers to sell fake drugs. This subsection would be entirely unnecessary if section 318-B:2(I) itself (by criminalizing "offers") already criminalized offers that are not bona fide. Not surprisingly, New Hampshire law in general disfavors readings of statutory terms that render a part of the pertinent statute entirely superfluous. See Garand v. Town of Exeter, 977 A.2d 540, 544 (N.H. 2009) (presuming that the legislature "does not enact unnecessary and duplicative provisions"). Of course, one might eliminate any superfluousness by positing that "offer" in section 318-B:2(I) includes only some offers that are not bona fide. But this parsing strikes us as too precious given that it lacks any textual hook and given no reason to think it odd that New Hampshire might choose not to criminalize merely making purely insincere offers to sell controlled drugs. We therefore tend to think that offers under

section 318-B:2(I) do not include "mere" offers made without the intent and ability to make good on the offer.

So, too, did the district court. But it also wisely and carefully took the added step of offering Burghardt the time and opportunity to see if there is any evidence that New Hampshire has ever prosecuted anyone under section 318-B:2(I) for an offer that was admittedly not bona fide. Burghardt found none. That finding, in turn, calls to mind the Supreme Court's "caution against crediting speculative assertions regarding the potentially sweeping scope of ambiguous state law crimes." Swaby v. Yates, 847 F.3d 62, 66 (1st Cir. 2017); see Gonzales v. Duenas-Alvarez, 549 U.S. 183, 193 (2007) ("[T]o find that a state statute creates a crime outside the generic definition of a listed crime in a federal statute requires more than the application of legal imagination to a state statute's language. It requires a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime."); see also Moncrieffe v. Holder, 569 U.S. 184, 191 (2013). Duenas-Alvarez teaches that it is Burghardt's burden to show a "realistic probability" that New Hampshire would apply section 318-B:2(I) to "mere" offers to sell drugs. 549 U.S. at 193. With the statutory text read as a whole in context providing only a questionable reed of support for Burghardt's preferred reading, he need "at least point to his own case or other

cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues." Id.

Instead, Burghardt relies on Swaby, a case where we concluded that Duenas-Alvarez's legal-imagination doctrine was inapplicable. 847 F.3d at 66. But Swaby is easily distinguishable from the case at hand. There, a noncitizen was convicted for a manufacturing-delivering-or-possessing-a-drug offense under Rhode Island law. Id. at 65. We held that "[t]he state crime at issue clearly does apply more broadly than the federally defined offense" because the Rhode Island drug schedules unambiguously included a drug not listed on the federal drug schedule. Id. at 66 ("Simply put, the plain terms of the Rhode Island drug schedules make clear that the Rhode Island offense covers at least one drug not on the federal schedules. That offense is simply too broad to qualify as a predicate offense under the categorical approach, whether or not there is a realistic probability that the state actually will prosecute offenses involving that particular drug.").

Burghardt's reliance on Swaby would be apt if New Hampshire similarly and unambiguously defined a "sale" as "an offer, even if the offeror has neither the intent nor the ability to proceed with the sale." If that were the case, the panel would follow Swaby's teaching to avoid "treat[ing] [the state offense] as if it is narrower than it plainly is." Id. at 66. But here, the fair and likely most reasonable reading of the statute and New

Hampshire law, given the law's ambiguity, places on Burghardt the burden of producing authority to suggest that New Hampshire would apply section 318-B:2(I) to "mere" offers. Duenas-Alvarez, 549 U.S. at 193. Because he has not done so, his sentencing challenge is unavailing.

For the foregoing reasons, we hold that section 318-B:2(I) is a "serious drug offense" as defined under the ACCA.

## C.

Having determined that the district court properly sentenced Burghardt under the ACCA, we need not address his argument that his Guidelines base offense level was miscalculated. And, as noted above, Burghardt correctly concedes that his challenge to the application of the ACCA's mandatory minimum as a violation of his Sixth Amendment rights is foreclosed by binding precedent. See Almendarez-Torres v. United States, 523 U.S. 224, 226-27 (1998); see also United States v. McIvery, 806 F.3d 645, 653 (1st Cir. 2015); United States v. Jiménez-Banegas, 790 F.3d 253, 258-59 (1st Cir. 2015).

## III.

For the foregoing reasons, we affirm Burghardt's conviction and sentence.

- 24 -