# United States Court of Appeals
## For the First Circuit

No. 21-1713

MARLON GUARDADO,

Petitioner, Appellant,

v.

UNITED STATES OF AMERICA,

Respondent, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Timothy S. Hillman, U.S. District Judge]

Before

Barron, Chief Judge,
Selya and Howard, Circuit Judges.

Mark W. Shea, with whom Jean C. LaRocque and Shea & LaRocque, LLP were on brief, for petitioner.
Randall E. Kromm, Assistant United States Attorney, with whom Rachael S. Rollins, United States Attorney, was on brief, for respondent.

August 7, 2023

HOWARD, **Circuit Judge**.  Marlon Guardado appeals from an order of the district court denying his motion to vacate, set aside, or correct his sentence, filed pursuant to 28 U.S.C. § 2255.  On October 30, 2013, he pleaded guilty to seven counts of being a felon in possession of ammunition and/or firearms in violation of 18 U.S.C. § 922(g)(1).  Following his guilty plea, the Supreme Court held in Rehaif v. United States that to convict a defendant of violating § 922(g), the government must prove that he knew that he had a relevant prohibited status (here, that he knew that he was a convicted felon) when committing the underlying offense or offenses.  139 S. Ct. 2191, 2200 (2019).  Guardado then filed a § 2255 petition arguing in relevant part that he would have proceeded to trial had he been told by the district court of that mens rea requirement.  The district court denied his petition.  After careful consideration, we affirm.

## I.

We briefly recite the factual and procedural background of this appeal.  As further detailed below, Guardado was convicted of numerous state offenses in Massachusetts and New York between 2003 and 2010.  In 2012, he was indicted on -- and eventually pleaded guilty to -- seven federal felon in possession of ammunition and/or firearms charges.  18 U.S.C. § 922(g)(1).  Guardado was sentenced on May 12, 2014, to concurrent sentences of 96 months' imprisonment and 2 years of supervised release on each

count.

In 2019, the Supreme Court held that, to sustain a conviction under § 922(g), the government must prove that "the defendant knew he possessed a firearm and also that he knew he had [a] relevant [prohibited] status when he possessed it." Rehaif, 139 S. Ct. at 2194. On June 22, 2020, Guardado moved to vacate under 28 U.S.C. § 2255 his felon-in-possession convictions, arguing in relevant part that he would have proceeded to trial had he been informed of that mens rea requirement at his plea colloquy.[1]

A person is a convicted felon for purposes of § 922(g)(1) if he or she "has been convicted in any court of[] a crime punishable by imprisonment for a term exceeding one year." 18 U.S.C. § 922(g)(1). Guardado committed the underlying § 922(g)(1) offenses from May 2010 to February 2011. As set forth in the presentence investigation report ("PSR"), he had been convicted of the following crimes that were punishable by more than one year before that time: 2003 -- two counts of criminal sale of a controlled substance (4th degree, unspecified degree) (sentenced

---

[1] Guardado does not appear to challenge on appeal the omission of the mens rea requirement from the indictment itself; only the district court's failure to inform him of that mens rea requirement at his plea colloquy. Moreover, and in any event, "[a] guilty plea waives all non-jurisdictional challenges to an indictment[,]" United States v. Burghardt, 939 F.3d 397, 402 (1st Cir. 2019), and there is no reason to excuse the waiver in this case. On the other hand, "[a] guilty plea does not waive all challenges to the plea itself." Id. (emphasis added).

to one year) (N.Y.); 2005 -- possession with intent to distribute a Class A controlled substance (Mass.); 2007 -- assault with a dangerous weapon (handgun) (Mass.); 2008 -- assault and battery ("A&B") (Mass.) (served six months); 2008 -- assault and battery with a dangerous weapon ("ABDW") (bar stool) (Mass.) (served six months); 2009 -- A&B (Mass.) (served 60 days); 2010 -- 2 counts A&B (Mass.) (suspended sentence of 1 year, violated probation, sentenced to 2.5 years in March 2012). See also United States v. Guardado, 552 F. Supp. 3d 52, 58 & n.6 (D. Mass. 2021) (district court's summary).[2]

As correctly summarized by the district court, Guardado had never "served or [been] sentenced to serve more than one year in prison for a single state offense before the underlying federal offense[s] (he was sentenced to 2.5 years for the probation violation one month after the charged firearms sales in this case concluded in February 2011)." Id. at 58-59. The district court nevertheless denied Guardado's § 2255 petition, having found in relevant part that Guardado failed to make the required showing that the Rehaif error in his plea colloquy had "prejudiced him under the First Circuit's plain error test." Id. at 60. This appeal followed.

---

[2] We have included the amount of time sentenced or served for each offense where the PSR included that information.

We review the district court's legal conclusions denying a § 2255 claim de novo, and its findings of fact for clear error. Ellis v. United States, 313 F.3d 636, 641 (1st Cir. 2002). Where, as here, the district court dismisses the petition "without holding an evidentiary hearing, we take as true the sworn allegations of fact set forth in the petition unless those allegations are merely conclusory, contradicted by the record, or inherently incredible." Id.

Guardado claims error on the basis of the district court's failure during his plea colloquy to advise him of § 922(g)(1)'s mens rea requirement. He did not raise that objection until he filed his § 2255 petition, which results in a procedural default on collateral review unless he can demonstrate cause for the default and actual prejudice from the error. See Bousley v. United States, 523 U.S. 614, 622 (1998). Here, there is no dispute that there was cause for the default, because Rehaif was decided after Guardado pleaded guilty, and that an error occurred; the only question is whether that error actually prejudiced him.

To show actual prejudice in cases that result in a plea rather than a trial, a petitioner "must show that there is a reasonable probability that but for [the] errors, he would not have pleaded guilty and would have insisted on going to trial."

<u>Hill</u> v. <u>Lockhart</u>, 474 U.S. 52, 59 (1985). Establishing prejudice on plain error review on direct appeal is described in similar terms as establishing actual prejudice for purposes of collateral review; nevertheless, the latter showing is more demanding. <u>See</u> <u>Ramirez-Burgos</u> v. <u>United States</u>, 313 F.3d 23, 32 & n.12 (1st Cir. 2002); <u>United States</u> v. <u>Frady</u>, 456 U.S. 152, 166 (1982).

Following <u>Rehaif</u>, we have issued several decisions involving direct appeals of defendants who alleged plain error because they were not advised of the <u>Rehaif</u> requirement before pleading guilty. <u>See, e.g.</u>, <u>United States</u> v. <u>Guzmán-Merced</u>, 984 F.3d 18, 19 (1st Cir. 2020); <u>United States</u> v. <u>Burghardt</u>, 939 F.3d 397, 400 (1st Cir. 2019). Although Guardado makes his claim on collateral review, those cases are nevertheless instructive. In such cases, we have found four basic principles important as to whether a defendant had shown actual prejudice: (1) the level of proof that a defendant knew that he had previously been convicted of offenses punishable by more than a year in prison, such as whether he was sentenced to over a year's imprisonment for any of the relevant previous offenses or whether he would have been informed of the maximum possible sentence for such crimes; (2) whether he would have lost any benefits in foregoing his guilty plea; (3) the time between the previous offenses rendering him a convicted felon and the § 922(g)(1) offense; and (4) his personal profile, such as his age, education, and background, on the

understanding that those factors could affect a defendant's ability to understand the consequences of his previous convictions, even if they were explained to him.  See Burghardt, 939 F.3d at 404-05; Guzmán-Merced, 984 F.3d at 20-21.

## III.

Turning to Guardado's case, there is no dispute here that he never served a sentence of imprisonment of over a year (nor was he ever sentenced to serve such a term of imprisonment) before the underlying federal offenses.  The government also argues, and Guardado does not dispute, that he would have lost the three-level sentencing reduction for acceptance of responsibility by proceeding to trial.  Guardado nevertheless advances three principal arguments on appeal: (1) that he was not informed that his state convictions carried possible sentences of greater than a year; (2) that aspects of the Massachusetts court and prison systems further discussed below meant that he could not have understood that he was a convicted felon; and (3) that his history of mental illness and limited educational history curtailed his ability to understand the implications of his state convictions. We address each contention in turn.

## A.

We start with whether Guardado was informed of the maximum possible sentence attached to at least some of the relevant Massachusetts crimes of which he was convicted.

Under Massachusetts Rule of Criminal Procedure 12, judges are required to advise defendants entering guilty pleas or admissions to sufficient facts of their potential sentencing exposure to ensure that their pleas are knowing, intelligent, and voluntary.  See Mass. R. Crim. P. 12(a)(3) & (c)(3).[3]  In the § 2255 proceedings below, the government asserted that Guardado had pleaded guilty to "at least some, if not all" of the relevant previous Massachusetts charges, and therefore would have been advised that he could be sentenced to over a year's imprisonment for those offenses.

The government did not, however, present evidence of that fact, nor specify the specific crimes to which he pleaded guilty.  Nevertheless, Guardado did not contest in any manner the government's assertion.  The district court thus concluded that Guardado had pleaded guilty to at least "some of his [] prior Massachusetts [] convictions, and therefore on several occasions [] would have been informed by a judge in state court that the offense he was pleading guilty to carr[ied] a maximum length of more than one year."  Guardado, 552 F. Supp. 3d at 59.

On appeal, the government contends that, although we may rely on that uncontested assertion, we may also take judicial

---

[3]  Because admitting to sufficient facts and pleading guilty are treated the same for purposes of Rule 12, hereinafter we do not distinguish between the two, and refer to them both as guilty pleas.

notice of state court records establishing that fact (that is, that Guardado pleaded guilty to several of the relevant Massachusetts crimes).

As an initial matter, we agree that, even without taking judicial notice of such records, we could rely on the district court's finding that on several occasions between 2004 and 2010 -- the earliest and latest dates of the relevant Massachusetts guilty pleas -- Guardado was informed that an offense to which he was pleading guilty carried a possible sentence of more than a year's imprisonment. Specifically, Guardado did not in any manner contest that assertion by the government in the § 2255 proceedings below (even if simply to say that the government should be required to introduce evidence of it) and did not in any way address the district court's finding to that effect in his opening brief on appeal. Jackson v. Marshall, 864 F.3d 1, 8 n.4 (1st Cir. 2017) (applying appellate waiver to an appeal from a petition for a writ of habeas under 28 U.S.C. § 2254).[4] Indeed, as the Supreme Court has noted in the context of plain error review:

---

[4] At oral argument, Guardado's counsel for the first time argued that it is possible that the Massachusetts judges in Guardado's cases did not comply with the Rule 12 requirement. But "except in extraordinary circumstances, arguments . . . raised for the first time at oral argument are considered waived." United States v. Pizarro-Berríos, 448 F.3d 1, 5-6 (1st Cir. 2006). There are no such extraordinary circumstances here because, among other reasons, Guardado's counsel did not proffer any evidence in support of that assertion.

> [T]here may be cases in which a defendant who is a felon can make an adequate showing on appeal that he would have presented evidence in the district court that he did not in fact know he was a felon when he possessed firearms. . . . But if a defendant does not make such an argument or representation on appeal, [we] will have no reason to believe that the defendant would have presented such evidence to a jury, and thus no basis to conclude that there is a "reasonable probability" that the outcome would have been different absent the Rehaif error.

Greer v. United States, 141 S. Ct. 2090, 2097 (2021).

As to the state court records proving that fact, Guardado contends in his reply brief that the government has waived its right to introduce them because in the proceedings below it "addressed solely what was in the presentence report," which did not distinguish as to whether Guardado's previous convictions were the result of guilty pleas or jury verdicts. But we have generally permitted the government to supplement the record on appeal with state court records susceptible to judicial notice, such as where the government has sought to introduce on appeal documents underlying alleged predicate convictions that were missing from the district court record to support sentencing enhancements under the Armed Career Criminal Act. See, e.g., United States v. Farrell, 672 F.3d 27, 30-31 (1st Cir. 2012) (noting that although the defendant did not contest consideration of the documents, he also "conced[ed] at oral argument that had he objected below, the evidence would likely have been submitted to the district court");

United States v. Huntsberry, 956 F.3d 270, 284 (5th Cir. 2020) (noting in the context of a Rehaif error asserted on direct appeal that it was appropriate to "judicially notice the facts of Huntsberry's prior felony conviction"). And it would seem odd to find that the government waived the right to supplement the record where the defendant did not contest its assertion below, and the defendant has the burden.

Accordingly, we take judicial notice of the state court docket entries submitted by the government. Those records show that Guardado pleaded guilty to four of the relevant offenses in Massachusetts state court: (1) possession of a Class A substance with intent to distribute on June 2, 2005; (2) A&B on December 5, 2008; (3) ABDW on December 22, 2008; and (4) A&B on October 27, 2009. Because Guardado has offered no reason to believe that the Massachusetts state judges did not comply with Rule 12, he has not shown that there would be a basis at a trial for even casting doubt on the evidence that he had been advised on multiple occasions that his crimes of conviction were punishable by more than a year's imprisonment. See Burghardt, 939 F.3d at 405 (noting that although records could in theory show that the defendant was not so advised, the fact that he had not submitted any such records "cut[] against him" because he had the burden of proof). And we note that the records for the December 5, 2008, plea include a waiver of rights signed by Guardado on that same day attesting that he was "aware

of the nature and range of the possible sentence(s)."

**B.**

Guardado contends that, in spite of such evidence, we should nevertheless find that he has met his burden of proof because of certain features of the Massachusetts criminal justice system.

Specifically, in all of his relevant Massachusetts state cases, Guardado was prosecuted in Massachusetts district courts. Massachusetts law defines a felony as a crime that is punishable by death or imprisonment in state prison, by contrast to a house of corrections, Mass. Gen. Laws ch. 274, § 1, and a defendant may not be sentenced to state prison time unless he is indicted by a grand jury, Commonwealth v. Smith, 444 Mass. 497, 499 (2005). Furthermore, only a superior court can impose a sentence involving state prison time; district courts lack that authority. See Mass. Gen. Laws ch. 218, § 27. Thus, Guardado contends that he would not have known that any of the crimes of which he was convicted were felonies under state law (and that all of them were deemed felonies under federal law) because any Rule 12 notice he received in the Massachusetts district court would not have included a discussion of a state prison sentence because he was prosecuted in district court and therefore could not be sentenced to imprisonment in a state prison.

As a preliminary matter, Guardado has not explained

which if any of his crimes were misdemeanors under state law, and we have not canvassed all of them. Nevertheless, it appears to us that at least A&B is, because the maximum sentence for it is 2.5 years in a house of corrections. Mass. Gen. Laws ch. 265, § 13A. There is an exception to § 922(g)(1) in 18 U.S.C. § 921(a)(20)(B) for certain state misdemeanors. Specifically, "any State offense classified by the laws of the State as a misdemeanor and punishable by a term of imprisonment of two years or less" is not a "crime punishable by imprisonment for a term exceeding one year." § 921(a)(20)(B) (emphasis added). A&B does not meet that exception; thus, it is a federal felony for purposes of § 922(g)(1).

But, more generally, Guardado's argument misses the point. It does not matter whether it was explained to Guardado that his crimes were felonies or misdemeanors under state law. At issue is whether he knew that he was a convicted felon under § 922(g)(1) -- that is, whether he knew that he had been convicted of crimes that were punishable by more than a year's imprisonment. See United States v. Austin, 991 F.3d 51, 59 (1st Cir. 2021) (explaining that proof of "subjective knowledge that he [was] violating the law" is not required -- rather, what is required is proof of "the defendant's knowledge that he had been previously convicted of a crime punishable by imprisonment for a term exceeding one year" (internal quotation marks omitted) (citing

Burghardt, 939 F.3d at 400)). All of the crimes to which Guardado pleaded guilty include a possible sentence of 2.5 years in a house of corrections. See Mass. Gen. Laws ch. 94C, § 32 (2005) (possession with intent to distribute a Class A controlled substance) (maximum sentence of imprisonment in state prison for not more than 10 years or in a house of corrections for not more than 2.5 years); Mass. Gen. Laws ch. 265, § 13A (2008) (A&B) (maximum sentence of imprisonment in a house of corrections for not more than 2.5 years); Mass. Gen. Laws ch. 265, § 15A (2008) (ABDW) (maximum sentence of imprisonment in a house of corrections for not more than 2.5 years or in state prison for not more than 10 years). And under Massachusetts law, a defendant may be sentenced for up to 2.5 years in a house of corrections in a district court. Mass. Gen. Laws ch. 279, § 23; Mass. Gen. Laws ch. 218, § 27. Thus, Guardado would have been advised that he could be sentenced to 2.5 years in a house of corrections for his crimes (even assuming he would not have been advised of possible state prison sentences).

For those reasons, we reject Guardado's argument that the fact that he was prosecuted for his Massachusetts convictions in Massachusetts district court establishes a reasonable probability that he would have proceeded to trial had he been

- 14 -

advised of § 922(g)'s mens rea requirement.[5]

## C.

Guardado further contends that his history of mental illness affected his ability to understand the maximum sentences attached to his relevant convictions, and that he has proved a reasonable probability that he would not have pleaded guilty but for the Rehaif error on that basis.

The district court correctly characterized Guardado's history of mental illness as "extensive and well-documented." Guardado, 552 F. Supp. 3d at 59. It is a staggering history. It appears that he first began mental health treatment shortly after he was sexually abused at the age of 9; since then, he has been hospitalized in state hospitals a total of eight times and he reported that he has had a total of 11 suicide attempts. He has been diagnosed with Bipolar Disorder with Psychotic Features and Antisocial Personality Disorder, among other conditions.

In his briefs, Guardado argues that his mental illness makes this case similar to that of Guzmán-Merced. 984 F.3d at 19. We agree that Guardado's history is serious and deserves attention.

_____

[5] We follow the parties in focusing only on Guardado's relevant felony convictions under Massachusetts law. As noted, he was also convicted of crimes punishable by more than a year's imprisonment under New York law. But the record is silent as to whether (1) the New York criminal system shares the same allegedly confusing features as Massachusetts's system, (2) his convictions under New York law were the result of guilty pleas, and (3) New York has the same requirements as Mass. R. Crim. P. 12.

But, nevertheless, that case was different from this one in several ways that are significant. Here, there is no evidence that Guardado has any learning disabilities, and he completed the ninth grade (three more years than Guzmán-Merced did). Id. at 19, 20. Unlike Guzmán-Merced, who had never spent a day in prison, Guardado has served several prison sentences. Id. at 20. And Guardado was in his early to mid-twenties at the time of the relevant Massachusetts offenses, while Guzmán-Merced was 18. Id. All of those facts make it less plausible here that a juror might have reasonably doubted that Guardado did not know that his previous state offenses were punishable by more than a year's imprisonment when he committed the underlying federal offenses.

That is not to say, of course, that a history of mental illness can never make a difference in a case like this. And, here, it may be reasonable to discount the strength of some of the government's evidence in light of Guardado's mental illness. At oral argument, Guardado's counsel made such an argument, noting that Guardado had been hospitalized on December 1, 2008, following several "suicide gestures." He was under "close observation" for approximately 17 days thereafter, and on discharge, was diagnosed with Adjustment Disorder with Depressed Mood and Polysubstance Abuse. During that time, on December 5 and December 22, 2008, he pleaded guilty to A&B and ABDW. We assume, therefore, for present purposes, that a reasonable juror might reasonably doubt on that

- 16 -

basis that at such hearings he was able to understand that he was pleading guilty to offenses punishable by more than a year's imprisonment.[6] And we assume that that may be true notwithstanding that a judge would have explained the possible consequences to him in accordance with Mass. R. Crim. P. 12, and notwithstanding that he signed a waiver acknowledging that he understood the range of possible sentences as to the December 5, 2008, plea or admission.

But, even so, the Massachusetts court records here show that he also pleaded guilty to § 922(g)(1) predicate crimes on June 2, 2005, and October 27, 2009. And other than his general argument based on his mental health history, he has not explained why he would not have understood the possible range of sentences he could receive when he was advised of them on those occasions. Moreover, the record shows that between approximately 1993 and 2007, he had no hospitalizations or documented treatment. Although his June 2, 2005, plea was approximately five to six years before the underlying federal offenses in May 2010 to February 2011, that is approximately the same gap in time between the prior offenses and the underlying federal offenses as in Burghardt. See Burghardt, 939 F.3d at 400, 404 (time gap of approximately six or

_____

[6] Guardado's counsel raised that argument for the first time at oral argument. Except in "extraordinary circumstances," an argument made for the first time at oral argument is considered waived. Pizarro-Berrios, 448 F.3d at 5. Nevertheless, for present purposes, we will assume that this case might warrant such an exception.

seven years).[7] And on October 27, 2009, approximately 6 months to 1.5 years before the underlying offenses, Guardado pleaded guilty to A&B, and thus would have again been advised that he was admitting to a crime with a possible sentence of 2.5 years in a house of corrections.[8]

On that basis, among others, we conclude that Guardado has failed to carry his burden of establishing that it is reasonably probable that he would not have pleaded guilty but for the Rehaif error. That conclusion is based on a combination of

_____

[7] It is true that, in Burghardt, there was the additional fact that the defendant had been sentenced to more than a year's imprisonment for his previous state offenses (though there was no evidence that he had ever served more than a year's imprisonment for any individual count). Burghardt, 939 F.3d at 404 & n.4. But, as explained below, unlike the defendant in Burghardt, Guardado also received a Mass. R. Crim. P. 12 notice only six months to 1.5 years before the underlying federal offenses. And the inquiry in Burghardt was whether the defendant had shown actual prejudice on direct appeal, while here, the inquiry is actual prejudice on collateral review, which is a more demanding requirement. Ramirez-Burgos, 313 F.3d at 32 n.12.

[8] We note that Guardado was hospitalized on June 16, 2009, following an attempted suicide, and was diagnosed with Bipolar Disorder Severe with Psychotic Features and Antisocial Personality Disorder, among other conditions, during that stay. The PSR does not specify how long he remained in the hospital thereafter (though his other hospital stays appear to have ranged from 8 days to 1.5 months).

Guardado did not develop any argument based on that hospitalization in his briefs or at oral argument. In addition, it took place approximately four months before his October 27, 2009, admission. Thus, without any argument to the contrary by Guardado, we will not assume that he might have thought that a reasonable juror would plausibly think that he lacked the ability to understand the October 27, 2009, proceedings on that basis.

four factors. First, Guardado provides no reason to cast doubt on the fact that the Massachusetts judges would have explained to him that he was pleading guilty to crimes for which he could be sentenced to 2.5 years in a house of corrections on at least two occasions -- occasions for which the record reveals no reason that a reasonable juror would have doubted his ability to understand that explanation. Second, one of those occasions was only approximately 6 months to 1.5 years before he committed the underlying offenses. Third, the sheer number of crimes punishable by more than a year's imprisonment of which he was convicted discredits the notion that he would not have known that he was a convicted felon at the relevant time. And, finally, he would have given up a 3-level reduction under the Guidelines for his acceptance of responsibility by not pleading guilty. The combination of those factors convince us that, here, it is not reasonably probable that Guardado would have pleaded guilty if he had been informed of § 922(g)(1)'s mens rea requirement.

## IV.

For the foregoing reasons, we **affirm** the district court's denial of Guardado's § 2255 petition.

- 19 -